FILED

NOV -13 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ANGEL TABE  (Plaintiff)        )
C/o 614 Ethan Allen Ave.       )
TAKOMA PARK, 20912.            )
Tel:703-574-2946.             )
                               )
            v.                 )
                               )   Case: 1:07-cv-02043
  ALLIED BARTON SECURITY SERVICES, )   Assigned To : Roberts, Richard W.
                               )   Assign. Date : 11/13/2007
  (Defendant)                  )   Description: Employ. Discrim.
  3606 Horizon Drive,          )
  King of Prussia, PA 19406    )
                               )

JURY ACTION

# COMPLAINT

**FIRST CAUSE OF ACTION FOR DISCRIMINATION SOLELY ON ACCOUNT OF MY DISABILITY IN CONTRAVENTION OF THE AMERICANS WITH DISABILITY ACT OF 1990 AS AMENDED. (Against all Defendants).**

1. NOW  COMES, Plaintiff, Angel Tabe appearing **pro se**  requesting relief from this Honorable Court and a jury trial, against Allied Barton Security Services for failing to reasonably accommodate my disability, in contravention of Title I of the ADA of 1990, which prohibits discrimination in employment against a "qualified individual with a disability".   On the 10th of November 2004, Mr. Milling -Operations Manager for Allied Barton Security Services said

40

2.   *" You can no longer work here"*,  after I presented him with documentation from my doctor stating that I had to wear a medically prescribed brace. Please see Exhibit 1- Copy of note from Dr. Rosita H. Dee, M.D., P.A , (Neurologist/Neurophysiologist & Disability Analyst)  stating that *"Patient is medically advised to use Back brace on  a continuous basis for her well-being*

45      *and safety"* .

I then asked him to put the decision  in writing. At that point he said   *"I do not want to be the one to commit myself"* .

3.   Allied Barton Security Services  took  adverse employment action against me on the 10th of November 2004,  for using an assistive device in contravention of Title I of the ADA  which

50      prohibits discrimination in employment against a "qualified individual with a disability".  Their contention to the contrary in their Position Statement of May 23rd (When the EEOC sent to me two years after) is mendacious as can be proved by my letter of November 24th 2005 stating my compelling reasons for declining their scheduled conference after my disgraceful firing. Please see Exhibit 2 (My Letter to Leon Beresford- Allied Barton Manager, stating that: *"After the*

55      *intimidation, harassment and finally termination from Barton's Managers ...it is difficult for me to expect any further serious and meaningful verbal discussions with Barton's representatives through whom the company has lost my trust."*

60

2

65   4.   I am a qualified individual because I had been satisfactorily performing the essential functions

of the job of security officer at the International Monetary Fund, as an employee of *Wackenhut*,

the predecessor contractor to Barton Security , with the use of my brace – an assistive device

that enables me to stand, and walk around freely in the performance of my job. I successfully

completed Allied Barton's screening and employment tests.

70   Allied Barton Security Services meets the statutory definition of an employer - it employs

37 .000 or more employees.

5.   I hereby state that I am disabled, that I am otherwise qualified for the job, with reasonable

accommodation, and that I suffered an adverse employment action solely on account of my

employer's refusal to reasonably accommodate my disability and the assistive device that

75   helped me in the fulfillment of my functions, and my other daily activities.

At all relevant times, Defendant Allied Barton Security Services later acquired by Allied

Security LLC is and was a corporation duly organized and existing under the laws of the

District of Columbia with its principal place of business at 700 19th Street, N.W, Washington

D.C 20433..

80   6.   I respectfully request the empaneling of a jury because the evidence presents sufficient

disagreement to require submission to a jury, particularly because defendant has contrived to

deliberately misrepresent the facts to conceal the shabby treatment meted against me for

wearing a medical device which according to defendant makes me look "sloppy" to work.

7.   That I have a disability that substantially limits my ability to perform my duties without the

85   assistance of a brace.

3

8.  I suffered Emotional Distress and humiliation as I was escorted out of my job, merely for using my brace – an assistive device that enabled me fulfill my functions. The law provides that non-economic, emotional distress damages are available under the rehabilitation act.

    In spite of my repeated efforts and other available openings for reasonable accommodation Barton Security failed to make legally required reasonable accommodation  for my disability. (See Background and Sequence of Events at Exhibit 3, second page: **Prior Unsuccessful Efforts Toward Accommodation).**

## FACTUAL BACKGROUND

9.  I worked as a Security Officer with Allied Barton from July 1st 2004  through November 10th 2004. Allied Barton Security Services took over from my previous employer Wackenhut Corporation. I had worked with Wackenhut Corporation since September 2001.  (See attached Background/Sequence of Events).

10. Please see also the following attachments: Copy of Initial  Charge of Discrimination filed with the EEOC  on the on the 13th of April 2005.).(Exhibit   4).

    Allied Barton's Position Statement of March 15th 2007,  (Exhibit 5) .

    Angel Tabe's Rebuttal to Allied Barton's Position Statement, April 4 2007. (Exhibit 6).

4

## CONTRADICTORY MESSAGES AND EXCESSIVE BACKLOG OF EEOC.

11. I made an initial complaint to the EEOC Washington D.C Field Office on April 13th 2005. The first response from the EEOC came 23 months after, in late March 2007. Please find attached

115    my email message of August 8th of 2007 with Ms. Mattie Whitfield, the EEOC investigator from the Baltimore Field Office (Exhibit 7) The message states in essence that *"After I made my charge in 2005, I attempted several times to contact the initial investigator,  Ms. Elisa Cogswell by phone, emails and physical visits to the DC Field Office, for purposes of keeping abrest  with the progress of the matter. Only once did I get  in touch directly with Ms.*

120    *Cogswell , who updated her email address through which I too updated my contacts when my initial address changed. I was never notified of any mediation anywhere, and it was indeed after a very long silence that I received from you in late March 2007 the Barton Position Statement of May 2005,  not even understanding how or why it was coming from Baltimore".* The attorney that I  retained to represent me later informed me in an email message informed t

125    hat *"because the EEOC failed to complete the investigation of (my) complaint within the statutory time frame . So the only question here is whether and when to file suit".* ( Exhibit 8, Email message from,   Cheryl Polydor , Esq,  Attorney at Law , John Berry PLLC 1990 M . Street, N.W., Suite 610, Washington D.C 20036).

12. Exhibit 9, which is another email message from my attorney unequivocally states as follows *" I*

130    *recommend that we decline the (EEOC)  conference and send a demand letter to your former employer in response to their settlement proposal".*

135

13. The record will therefore reflect that I made all diligent efforts to cooperate with the EEOC and my attorney to resolve the matter, and that the EEOC's failure to bring a resolution to this matter is not a result of my lack of cooperation or bad faith. There was therefore an appearance of impropriety and concealment in my relationship with the EEOC representative, who insisted on

140    speaking to me on the phone and making assertions which she subsequently refused to put in writing when I insisted on the need for documentation on the record. (See Exhibit 6 ). It is therefore ingeniousness, in my humble opinion, for the EEOC representative to inform my attorney that the investigative conference is unnecessary and then turn around and close my case for not attending the putative conference. (See Exhibit 10, EEOC Letter of Dismissal and

145    Notice of Rights)

## RELIEF SOUGHT

14. I, Angel Tabe hereby seek the relief of compensatory damages, the reinstatement of back pay, front pay, and compensation for future pecuniary losses, emotional pain, suffering, inconveniences, mental anguish, loss of enjoyment of life, on account of the injuries that have

150    15. been caused by the Defendant's deprivation of my constitutional rights. (I requesting leave from the Honorable Court to present the necessary document ion to justify this expenses at a a later date).

16. Due to the determination that Allied Barton Security Services has more than 501 employees, am demanding damages in the amount of $300,000.00 and all other damages available under

155    Title VII, Section 505 of the Rehabilitation Act or the ADA .

6

160    17. The humiliation I suffered in the eyes of my colleagues, staff and clients of the International

Monetary Fund, when I was escorted out of my job; the harassment, threats, intimidation and

deceit from senior Allied Barton Management has caused me severe emotional distress-

anxiety, embarrassment, loss of self-esteem, sleeplessness, excessive fatigue, and uncertainty

about the future, thus destabilizing my life. I am also pleading that the Honorable Court should

165    impose punitive damages against Allied Barton Security Services because they acted with

malice and reckless indifference to my federally protected rights.

18. In addition, my prayer to this Honorable Court is for additional damages under Section 706 (g)

and punitive damages against the defendants because, escorting a disabled employee out of her

workplace instead of providing legally required reasonable accommodations to enable her

170    fulfill her duties is, reprehensible. This Honorable Court should be the defender of the

aggrieved and helpless.

19. WHEREFORE, Plaintiff hereby prays that this Honorable Court should accord the requested

relief and all other relief that the Court finds appropriate to make me whole.

175 Respectfully Submitted:                         TRIAL BY JURY REQUESTED.

Friday , November 2, 2007.

Angel Tabe
C/o. 614 Etan Allen Ave.,
180 Takoma Park, MD, 20912.

185                                    7

*07-2043*
*RWR*

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS** TABE, ANGEL N.
C/O 614 ETAN ALLEN AVE.
TAKOMA PARK, MD 20912 88888

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS** ALLIED BARTON SECURITY
3606 HORIZON DRIVE
KING OF PRUSSIA, PA 19406
COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT MONTGOMERY
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
C/O 614 ETAN ALLEN AVE, TAKOMA PARK
MD 20912 - 703 574 2946

Case: 1:07-cv-02043
Assigned To : Roberts, Richard W.
Assign. Date : 11/13/2007
Description: Employ. Discrim.

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☒ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other)** OR ☐ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| □ **G. Habeas Corpus/ 2255** | □ ⊠ **H. Employment Discrimination** | □ **I. FOIA/PRIVACY ACT** | □ **J. Student Loan** |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | ⊠ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| □ **K. Labor/ERISA (non-employment)** | □ **L. Other Civil Rights (non-employment)** | □ **M. Contract** | □ **N. Three-Judge Court** |
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

□ ⊠ **ORIGIN**

| ⊠ 1 Original Proceeding | □ 2 Removed from State Court | □ 3 Remanded from Appellate Court | □ 4 Reinstated or Reopened | □ 5 Transferred from another district (specify) | □ Multi district Litigation | □ 7Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

*42 USC 12/01*

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

TITLE 1 OF THE ADA, REJECTION OF MEDICALLY PRESCRIBED ASSISTIVE BACK BRACE

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS □ ACTION UNDER F.R.C.P. 23   **DEMAND $** 300,000.00   Check YES only if demanded in complaint **JURY DEMAND** ⊠ YES   □ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction) — NO N.F.   □ YES ⊠ NO   If yes, please complete related case form.

DATE 11/3/07   SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd

# Rosita H. Dee, M.D., P.A.

NEUROLOGIST/NEUROPHYSIOLOGIST & DISABILITY ANALYST

8830 CAMERON STREET, SUITE 207 • SILVER SPRING, MD 20910
PHONE (301) 587-2257   FAX (301) 587-1351

3060 MITCHELLVILLE ROAD, SUITE 103 • BOWIE, MD 20716
EMAIL rhdeemd@covad.net

November 10, 2004

Re: Angel Toler

To whom it may concern,

Patient is medically advised to use Back brace on a continuous basis for her well-being & safety.

If there were any questions or concern, please feel free to call.

Sincerely,

07 2043

**FILED**

NOV 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

To: Leon Beresford,
Manager, Security Services
IMF/Barton

Angel Tabe
November 24, 2004.

Dear Mr. Beresford:

Thank you very much for inviting me to a meeting on Monday, November 29, 2004. I regret however that I am unable to attend.

~~After what I suffered these past weeks~~ by way of intimidation, harassment, and finally termination, from Barton's managers, as well as their close collaborators, it is difficult for me to expect any further serious and meaningful verbal discussions with Barton's representatives, through whom the company has lost my trust.

As per my meeting of 11/10/04 with Major Milling, on presenting a doctor's note about my medical condition as requested by Mr. Odom on 11/05/04, Major Milling said "You can no longer work here." When I requested that this be put in writing, obviously for future reference such as now, Major Milling said: "I do not want to be the one to commit myself." That indeed came through to me as pretty capricious, and I immediately realized that I could no longer have the collaboration of those placed to resolve this matter.

Naturally, it would have been a surprise therefore when almost two weeks after that meeting, precisely on 11/23/04, Ms Erin Headen called my home seeking to know when I would be back to work, and adding that Major Milling had requested that I bring "a doctor's note saying I could work WITHOUT the brace." – Erin's words. But it wasn't! Major Milling, the Operations Manager, had refused to document the decision to terminate me. Wrong about my feelings of capricious behavior?

For a recap of how I got to my present position, I do now realize that I was constructively terminated on Friday, November 5, 2004, the moment I was taken off post by Captain Yates, to Mr. Odom, in the presence of Major Milling, reason being "Tabe I cannot let you stand on post with the brace." – Captain Yates's words. While I was asked to wait outside the office, the mentioned three concocted a note for me to sign under enormous pressure. On my refusal, since the note did not represent what I had said, they asked me to "go home until you can produce a doctor's note saying that you could work WITHOUT the brace." – Mr. Odom's words. Aware of my doctor's position, I instead requested a letter saying the brace could not be allowed at the IMF site. His response: "That could be initiated by Human Resources." When I attempted speaking with a superior, i.e. you Mr. Beresford, I was forcefully ESCORTED out of the building, as traditionally done to fired personnel. So when Major Milling again reiterated this position during our meeting of 11/10/04, it became clear that the decision had been taken, and the request for my doctor's note was just a subterfuge to get me out. I accept the decision, and I am out.

Sincerely,

Angel Tabe.

07 2043

FILED

NOV 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT



## BACKGROUND / SEQUENCE OF EVENTS / MOTIF

These dates may not be exact, but I believe I am following the sequence of events,
enough to help us understand why things might have happened the way they did.

**Sept 2001**

- I assume duty at Wackenhut's IMF site

**After Sept 2001 and Prior to Dec 2001:**

- I was keeping my shirt in Cpt Milling's office, on his instructions, until some
  SOC operators told me not to. Prior to that, I thought it was normal for employees
  to keep their uniform there, only to realize that only supervisors who shared the
  office with the captain did. (By the time Allied took over from Wackenhut,
  Officer Panell who was rumored to be Captain Milling's girlfriend, kept her
  jacket in his office. I observed her and her friend …drop or pick up jacket and
  coat from there.)

- I was keeping my purse in the tapes cabinet, shown this spot by Capt Milling's. I
  even showed other colleagues the same cabinets to use because I thought it was
  the normal thing to do. But I ceased keeping my stuff at that location when Ofcr
  Yates, then working in SOC accused me of wanting to steal from the cabinet. I
  explained to her that Capt Milling had shown me that spot to keep my stuff. She
  said she would not allow it, no matter who had given me the spot. I carried my
  stuff away but raised the issue at a general meeting, and Ofcr Yates would still
  remember that very well, because then she explained that the cabinets were for
  storing tapes from security cameras, and SOC had been suffering loss of tapes. .

**After Dec. 2001 up to 2002**

- Capt Milling began telling me that he wanted to take me away with him. I initially
  took it for a joke, but he kept on and on until the phrase "One of these days I'm
  gonna take you home with me." became familiar to me.

- Then sometime after - 2002 or 2003, he told me he got divorced, adding, (to use
  his words): " I am now single and available for you to do whatever you want." . I
  down- played the whole issue, but he kept bringing up the topic at any
  opportunity that we were just two of us - like the hallway or the elevator. He even
  gave me a 703 phone number to call him. Of course, I never did.

- Around mid 2004, precisely during the IMF picnic at Brettonwoods, MD, Mjr
  Milling came to where I was sitting with my other team mates Ofcrs Aman and
  two others from I-Square. He took me away to the corner with him, and I,

*07 2043*

**FILED**

NOV 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

believing it was for the work related matters that took us to Brettonwoods, was indeed shocked when he only asked when I was going to be serious about him! I must have exploded somehow, because I told him, not in a normal voice, to never, ever raise that matter with me. After that incident I wouldn't say our relationship did not change. He later on threatened to fire me because I applied for a security position at the IMF.

Thursday, on or about Nov. 3, 2004

- Ms Vasquez insisted that I return my uniform (pants and shirts) and sign out for one size smaller because according to her, "You look sloppy."

- I forced a meeting with Mr. Beresford where I explained my brace situation, as wells as the sweater and transfer.

Friday, on or about  Nov. 4, 2004
- Capt Yates takes me off post from the turnstile to Mr. Odom, in whose office was Major Milling.

Tuesday, on or about Nov. 10
- I went to submit a doctor's note as requested by Mr. Odom. I am told that Major Milling would receive me, and he is the one who told me during our meeting that I could no longer work.


Also noteworthy:

 **PRIOR UNSUCCESSFUL EFFORTS TOWARD ACCOMODATION**

- On leaving the IMF for the UN, Mr. Nebo transferred me to I-square, but I was never allowed to leave. (Not long before, Mr. Nebo had heard of my medical condition, interviewed me lengthily and promised to find a helpful solution)

- When the physical transfer was not forthcoming, I discussed it with his successor, Mr. Green. He agreed that I move to I- Square, but he too had to leave abruptly, and my departure to I - square never happened.

- After he left, I was actually approached by Mr. Steele, his successor, who told me Mr. Green and passed on my transfer issue to him, and he was going to implement it. Even then, it didn't happen. In fact, Capt Sallie Douglas, my shift leader at the time, summoned me one evening and said she had been given the responsibility to tell me something she said she could not exactly remember, but the bottom-line was that Mjr Milling thought I should look for another job, and she was also advising me to do that. At that point, I complained about what I thought were sexual advances being made to me by Major Milling, and her response was that I should be careful because if anything, I was the one in danger of losing my job

because Major Milling was the boss. I also recalled Capt Edgar Angulo, who had initially asked for medical papers to support my condition, saying accommodation would be automatic after medical papers were seen, only had the same answer after Mr. Nebo left. At the time, he added mockingly that Mr. Nebo had left, and his decisions did not hold anymore. (A longtime after, years perhaps, Mr. Nebo came for Mr. McLaughlin's retirement party, and was very surprised to see me standing at the turnstile.)

My impression is that at all times, someone very influential in the hierarchy, someone whom newcomers depended upon for advice, someone in operations, someone who decided who worked at the site and who did not, someone, someone … who probably held something against me and thought I should not be around him, kept stalling efforts to accommodate my condition, and he continued even when Allied Barton took over. In any case, he acted, at all times, on behalf of management, and the company that they represented.

08-30-07    02:52pm    From-EE~~~~re DO                410 962 ~~~~        T-105   P.002/002   F-978

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | ☐ FEPA<br>☒ EEOC | 100-2005-00835 |

**D.C. Office Of Human Rights** and EEOC

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(incl Area Code)* | Date of Birth |
|---|---|---|
| Ms. Angel Tabe | (301) 583-0085 | 04-13-1960 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 6911 Annapolis Road, Hyattsville, MD 20784 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| ALLIED BARTON | Unknown | (703) 998-5740 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 700 19th Street, N.W., Washington, DC 20433 | | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 07-01-2004 | 11-10-2004 |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was a Security Officer with Allied Barton from July 1st, 2004, through November 10, 2004. Allied Barton took over my previous employer, The Wackenhut Corporation. I had been a Security Officer since September 2001. In the summer of 2004, I inquired about a position where I could sit, and I was trained for a sitting position. This accommodation was denied. On November 4, 2004, I was told that the prescribed devices used to aid me with my disability "did not present well" with my uniform. Allied Barton told me I looked "sloppy" by wearing one size too big to hide my medical devices. On this date, I was pressured to sign documentation where I agreed to work without my medical devices and where I affirmed that I had mobility without them. Since I needed my medical devices for my disability, I could not sign such a waiver. On this date, I inquired about wearing a uniform sweater to cover up the devices, but was told that I could not do so. Thereafter, I was escorted out by the supervisor of security. I was not allowed to go to my locker by myself. I also had to give the supervisor my uniform gear. I was treated like a terminated employee.

On November 10, 2004, I returned with a note from my physician stating that I needed to continue the use of the prescribed medical devices. In response to my physician's note, I was told that I "could no longer work here." Approximately two weeks later, Allied Barton called me in for a meeting. I responded to their request in writing. After that, I never heard from Allied Barton again.

I believe that I have been discriminated against because of my disability in violation of the Americans with Disabilities Act of 1990, as amended, and because of my gender (female) in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Apr 13, 2005<br>Date       Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS<br>*(month, day, year)* |

07 2043

FILED

NOV 1 3

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Baltimore Field Office**

City Crescent Building
10 South Howard Street, 3rd Floor
Baltimore, MD 21201
(410) 962-3932
TTY (410) 962-6065
FAX (410) 962-2817/4270

March 15, 2007

Ms. Angel Tabe
11100 Oak Leaf Drive #77
Silver Spring, MD 20901-1310

EEOC #: 100-2005-00835

Dear Ms. Tabe:

Enclosed is a copy of the Position Statement without attachments from your employer. Please read and submit your rebuttal along with any additional information to this position statement by **March 30, 2007.**

IF WE HAVE NOT HEARD FROM YOU BY THE ABOVE DATE, WE WILL ASSUME THAT YOU DO NOT INTEND TO SEND A REBUTTAL TO YOUR CHARGE OF DISCRIMINATION.  A NOTICE OF RIGHT TO SUIT WILL BE ISSUED TO YOU.

If you have any questions, please feel free to give me a call on (410) 209-2752, between the hours of 7:30 a.m. to 4:30 p.m. and my email address is mattie.whitfield@eeoc.gov.

Sincerely,

Mattie J. Whitfield
Investigator

Enclosure

*Note: 3/23/07 @ 10.50am.
on
i spoke w Ms Whitfield,
she extended deadline to
April 6, 2007 (from March 30)*

07 2043

**FILED**

NOV 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**ALLIED**
S E C U R I T Y®

May 23, 2005

Stanika K. Smith, Investigator Support Assistant
U.S. EEOC, Washington Field Office
1801 L Street, N.W., Suite 100
Washington, DC 20507

Re:    **Angel Tabe v. AlliedBarton Security Services**
       **EEOC Charge No.: 100-2005-00835**

Dear Ms. Smith,

1   In August of 2004, Barton Protective Services LLC ("Barton") was Acquired by Allied
Security LLC, but at all times the complainant, Angel Tabe ("Ms. Tabe"), remained an
employee of Barton.

2   Please allow this letter to serve as the Position Statement of Barton with respect to the
above-referenced Charge. Barton reserves the right to supplement or modify this Position
Statement should additional information become available.

3   Ms. Tabe alleges that she was discriminated against based upon a disability. Barton
categorically denies Ms. Tabe's claim. At all times, Barton and its agents have complied
with Barton's own legitimate policies and all local, state, and federal laws regarding fair
employment practices. Ms. Tabe failed to engage in an interactive process in an effort to
address her request for an accommodation for her alleged disability.

4   By way of background, Barton is contracted by the International Monetary Fund ("IMF")
to provide security guard services to its facility in Washington, DC. On or about June 1,
2004, Ms. Tabe was hired by Barton and assigned to work as a Security Officer at the
IMF account. Ms. Tabe had been employed as a Security Officer at this facility by the
previous security vendor.

5   On or about November 5, 2004, a Barton Supervisor, Karen Yates ("Ms. Yates"), brought
to the attention of the Training and Quality Assurance Manager, Mark Odom ("Mr.
Odom") and the Operations Manager, Arthur Milling ("Mr. Milling"), that Ms. Tabe was
wearing a plastic back brace outside of her uniform. In response, Mr. Odom requested
that Ms. Yates and Mr. Milling meet him in his office with Ms. Tabe to discuss the
situation. During the course of the subsequent conversation in Mr. Odom's office, Ms.
Tabe indicated that she was physically unable to perform her job. Concerned by Ms.
Tabe's statement, Mr. Odom appropriately asked Ms. Tabe if she had submitted to Barton
a medical release or any other medical information; Ms. Tabe indicated that she had

submitted such documentation. Mr. Odom immediately asked the office Administrative Assistant, Erin Headen ("Ms. Headen"), to check Ms. Tabe's file. Ms. Headen was unable to find any medical documentation in Ms. Tabe's file. Mr. Odman informed Ms. Tabe that she must have submitted the medical documents to her previous employer, the prior IMF security vendor, but not to Barton. As a result, Mr. Odom informed Ms. Tabe that as she had indicated that she was physically unable to perform her job, than she could not be allowed to continue to work until she produced a medical release. Mr. Odom informed Ms. Tabe that she would be returned to work upon submission of an appropriate medical release (see exhibit "A" and "B", statements from Mr. Odom and Ms. Yates).

6. On or about November 10, 2004, Ms. Tabe met with Mr. Milling and produced medical documentation (see exhibits "C", "D", "E", and "F") which indicated that Ms. Tabe was released to return to work but that she required limited duty. Mr. Milling indicated that he was not aware of any such limited duty at IMF but that Ms. Tabe would need to speak with Leon Beresford ("Mr. Beresford"), the Senior Barton Manager for the IMF Account. Mr. Milling told Ms. Tabe to contact Ms. Headen at 8:00AM on November 11, 2004, in order to schedule an appointment with Mr. Beresford to discuss Ms. Tabe's return to duty (see exhibit "G", statement from Mr. Milling).

7. Ms. Tabe failed to contact Ms. Headen on November 11, 2004 as she was instructed by Mr. Milling. Since Mr. Beresford had been apprised of the situation, when Ms. Headen failed to hear from Ms. Tabe, Mr. Beresford asked Ms. Headen to attempt to contact Ms. Tabe. Accordingly, on November 11, 2004, Ms. Headen left three (3) messages at the telephone number on record for Ms. Tabe; Ms. Headen received no return call. On or about November 23, 2004, concerned because he had still not heard from Ms. Tabe, Mr. Beresford again requested that Ms. Headen try to reach Ms. Tabe. This time, Ms. Headen was able to reach Ms. Tabe at a telephone number which she received from the local Barton Branch Office. Ms. Headen scheduled a meeting for Ms. Tabe with Mr. Beresford on November 29, 2004 (see exhibit "H", statement from Ms. Headen). On or about November 25, 2004, Mr. Beresford received a letter from Ms. Tabe indicating that she would not be attending the scheduled meeting on November 29, 2005.

8. In summary, Barton contends that Ms. Tabe failed to engage in an interactive process in a good faith effort to identify a reasonable accommodation. Ms. Tabe was never terminated or refused an accommodation. On the contrary, Ms. Tabe was repeatedly directed to meet with Mr. Beresford, Barton's Senior Manager for IMF, to discuss the situation. Ms. Tabe failed to contact Ms. Headen on November 11, 2004, as directed, in order to schedule a meeting with Mr. Beresford. Despite Ms. Tabe's failure to contact Mr. Beresford, multiple attempts were made by Barton to contact Ms. Tabe. After much effort on the part of Barton, a meeting between Mr. Beresford and Ms. Tabe was finally scheduled which unfortunately was canceled by Ms. Tabe. By refusing to meet with Mr. Beresford, Ms. Tabe denied Barton the opportunity to offer her a reasonable accommodation, if it was determined that she was entitled to one. 11

Accordingly, Barton respectfully requests that you dismiss Ms. Tabe's complaint and enter a finding of no probable cause.

If you have any questions, or need additional information, please contact me at 610-239-1233.

Thank you for your consideration of our position.


Sincerely,


Brian O'Connor
Corporate Director
Employment Practices and EEO Compliance

- 1 -

U.S. EQUAL EMPLOYMENT
OPPORTUNITIES COMMISSION
10 South Howard Street, 3<sup>rd</sup> Floor
City Crescent Building,
Baltimore, MD 21201
Attention: Ms Mattie Whitfield, Investigator

    Angel Tabe
    11100 Oak Leaf Dr
    Silver Spring, MD 20901
    April 4, 2007

RE:  Your letter EEIC # 100-2005-00835 of March 15, 2007

SUBJECT: REBUTTAL: Angel Tabe v. AlliedBarton Security Service

Dear Ms. Whitfield

1. To comply with your request, this rebuttal is being provided as a response to the Position
   Statement of May 23 2005 submitted to you by Allied Security following my allegation that
   the company discriminated against me upon my disability.

2. The facts in my complaint, incorporated by reference to this rebuttal, will prove, contrary to
   what AlliedBarton alleges, that Barton, through its agents, did not comply with local, state
   and federal laws regarding fair employment practices. They will also show that I made
   reasonable efforts to request for an accommodation for my disability – efforts which were
   thwarted by the management.

3. As background information, I was employed by Wackenhut as Property Resource Officer
   (PRO) for the performance of the contract with the IMF in 2001. It is worth noting that I was
   inherited by Barton from Wackenhut with a disability and that they allowed me use braces -
   an accommodation which AlliedBarton management officials refused to accept, as
   evidenced by the Quality Assurance Manager, Mr. Odom coercing and intimidating me to
   sign his statement that I COULD WORK WITHOUT THE BRACE, and later by the
   Operations Manager, Mr. Milling, rejecting my doctor's that said I couldn't..

4. Some inaccuries in the Barton Position Statement:
   a. In p.1 paragraph 5 "…Ms Tabe indicated she was physically unable to perform her job."
      I NEVER at any instance indicate to Mr. Odom or anyone in the company, that I was
      physically unable to perform my job, I had been performing it since 2001 with
      Wackenhut. I believe the logical suite to such a complaint would have been a termination
      letter. I never got any.

   b. Continuing in paragraph 5 on p. 2, lines 1-5: "Mr. Odom IMMEDIATELY asked… Erin
      Headen to check Ms Tabe's file… Mr. Odman informed Ms. Tabe …to her previous
      employer…" First of all, I do not know anybody called Mr. Odman. Secondly, I do not
      recall any instance during the encounter in Mr. Odom's office when Ms. Headen
      featured. Instead, it was Mr. Milling who reminded me that I had presented medical
      papers to my previous employer, Wackenhut. That company, he went on lightheartedly,
      had left, and with them the files of their employees. (of which I had been one.)

07 2043

**FILED**



NOV 1 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

- 2 -

c. On p. 2 paragraph 6: "... but that Ms Tabe would need to speak with Leon Beresford...Mr. Milling told Ms Tabe to contact Ms. Headen... to schedule an appointment with Mr. Beresford to discuss Ms Tabe's return to duty...". On November 10, 2004 when I presented medical papers to Mr. Milling, he was very specific. After looking through the papers, he handed them ALL back to me stating in these words: "You can no longer work here." I then requested that he put that in writing and his response was "I do not want to be the one to commit myself." There was no mention whatsoever of me meeting Mr. Beresford, neither was there a mention of Ms Headen, whose desk was right across. Naturally, I could have easily contacted her physically, instead of calling the next day. Mr. Milling gave me a number with area code 703 to call. I am not aware of any 703 number that reaches Ms. Headen's office. And I was here before the Operations Manager, someone who, experience had shown, virtually decided who stayed and who left their job. At that point I again handed him my medical papers, requesting that he make copies. Frankly, I got the feeling right there and then that he intended to manipulate the fact that I ever came back with any papers from my doctor. Thanks to that act, AlliedBarton is today able to refer to exhibits C, D, E, and F. After the copies were made, Ms. Angela Dodd who had escorted me on arrival again escorted me out of the building.

d. Further evidence of manipulation and distortion of facts by Mr. Milling can be found in the one and only phone call / conversation with Ms. Headen on or about November 23, 2004. (Please note that no phone calls, no voicemails, none whatsoever, were made to or left for me on November 11 2004 or any other date.) Based, I believe on how Mr. Milling apprised Mr. Beresford of the situation, Ms. Headen called saying "Ms Tabe, nobody fired you! Major Milling only requested that you bring your doctor's papers!" Doctor' papers? Again?

e. Question: Why, on November 23, 2004 would Ms Headen be talking of Mr. Milling requesting medical papers when I had submitted them on November 11, 2004? Is this anything other than a gross inconsistency of a material fact in this matter?

f. In paragraph 8 line 3: "On the contrary, Ms Tabe was REPEATEDLY directed to meet with Mr. Beresford..." I was NEVER, not even once, directed by anyone to meet with Mr. Beresford about this matter. On or about 11/03/05, I forced a meeting with him, during which I suggested ideas for reasonable accommodation. He turned down every suggestion. I tried again the next day, but it was just another desperate, unsuccessful attempt. ·

5  By way of background, November 2004 was not at all the first time Ms. Yates, other supervisors and colleagues saw me wearing a back brace. In fact, Ms. Yates actually sympathized with me the first time she learned of my condition about a year before. When she took me to meet with Mr. Odom, Mr. Milling was already in his office, and they had my file on the table before them. As Ms Yates reported the situation, Mr. Odom impatiently, in fact impolitely, waved his hand at me to wait outside. Can I be told why they had my file before them?

6. After a while, I was summoned back in and presented a note to sign under coercion. I insisted on at least reading the note first, and behold, it was saying something I had not said - that I COULD WORK WITHOUT THE BRACE. I therefore refused to sign because my doctor had made it clear to me that I would for life, need the brace for my wellbeing. Knowing my doctors position, I requested instead, a statement reflecting what management was manifesting, i.e. that they did not want me to wear my brace to work. To this, Mr. Odom responded, "That could be initiated by Human Resources." But for the immediate, no further discussions, I had to go home until I could produce a note from my doctor defending their requirement that I COULD WORK WITHOUT THE BRACE. Note that my brace was being rejected not because it hindered me from performing assigned tasks, but only because "it did not present well on the uniform", to quote Ms. Yates as she took me off post.

7. Out of Mr. Odom's office, I saw Mr. Beresford and tried to speak with him but he refused. I pleaded that it was urgent, important and that I was desperate. That was when Ms. Yates intervened. She was vehement that she had been instructed to escort me out and I was not allowed to speak with anyone, let alone to most management! She then escorted me to the ladies locker room to pick up my stuff, and we proceeded to exit the building. When we got to the lobby I realized I had kept the company winter jacket and hat at the receptionist desk, and had to take them to the locker room. Amidst apparent jeers and unusual looks from both my colleagues, IMF staff and clientele, Ms. Yates bluntly told me she was not going back down there, and neither was she letting me go alone! She instead took the jacket, hat and belt, items she should account for today. For all the years I served at the IMF building, this type of forced, humiliating escort exit was reserved only for fired personnel and unwelcome clientele. In addition to the public humiliation, I suffered long and severe emotional distress because of the extreme and outrageous conduct of my employer's management officers, especially Messrs. Odom (Quality Assurance manager) and Milling (Operations manager).

8. May I again draw attention to the fact that this matter is all about a back brace that I wore prior to working for both Wackenhut and Barton. I actually wear braces on my knees following the same auto injury, but since these are not visible, there's no problem with them. The back brace became an issue under the Barton management only for aesthetic reasons. Unlike Wackenhut, their uniform exposed, instead of concealing it. Of course I had no say in the choice of the Barton uniform. So I managed without the brace some days, depending on the post, especially if it were a sitting position, which explains why I earlier on applied to be transferred to another building with permanent sitting positions. However, for quite a while, I had been working at the Child Center, and Ms. Yates had indicated that that would be my permanent post. So on the day of the incident, I came ready to go to Child Care where I normally wore my winter jacket that concealed the brace, but was assigned to the lobby, totally a standing position which did not require the winter jacket.

9. I also wish to point out that prior to meeting with Messrs. Odom and Milling, I had met and discussed my brace situation in detail with Mr. Beresford. This was on a Thursday, the day our spring jackets were recalled and sweaters issued with instructions that they not be worn before the following Monday. During the meeting, I pleaded for an authorization to wear the sweater in order to conceal the brace. He refused. Then I also inquired about an application submitted months earlier for transfer to "I-Square", a site that would not always require me to use the brace because it had mostly sitting positions. He told me he could not say exactly

what level the application was. At the time I submitted this transfer request, the site supervisor had expressed need and preference for staff with IMF experience. When I occasionally inquired about the progress of the application from Ms. Yates the shift supervisor through whom it was channeled, she kept saying "Forget about it, Tabe."

10. On my part therefore, I believe I made efforts to prevent issues with the brace which I require for support following injury in an auto accident. But I failed because of bad faith on the part of AlliedBarton management. When I returned to the site with medical papers, I came ready to work, but was again escorted in and out of the building by Ms Angela Dodd, a Supervisor. Why was I being escorted over and over if I were still a staff? Or why was I so unwelcome because of a medical condition? In fact, I am yet to understand how one phone call by an Administrative Assistant, following false accounts by senior management, could be indicative of an interactive process for "reasonable accommodation". I find their claims in that direction outright ridiculous, and maintain that Barton discriminated on me based on my physical disability. I wish that experts intervene in this matter and apply the law as prescribed.

11. I also wish to observe that the AlliedBarton statement reflects my skepticism for not meeting with the officials mentioned in the statement. At all times that we met and I requested written statements of their decisions, from Messrs Odom and Milling, they never gave any. Today they give accounts that completely exclude decisions they made on behalf of the company. The letter expressing my lack of trust in Barton management and canceling the meeting of November 29, 2004, was thus an attempt to avoid a situation where I showed up only to be told that no-one invited me, since there was nothing written to that effect. It was also an attempt to begin documenting actions by a management that manifested bad faith and did not respect what it said. I never got a response to that letter to this day. Talk of interactive process and good faith?

12. Because of the foregoing facts, there is compelling evidence that AlliedBarton's Management violated my rights under the Americans with disabilities Act, by not allowing the accommodation that was appropriate to the circumstances. Instead, they publicly humiliated, ridiculed and submitted me to severe emotional stress, and deprived of a job in which I had acquired skills, experience and goodwill for over three years. For that reason, I reserve the right to request compensatory damages from AlliedBarton. Not all relevant supporting documents are attached. I reserve the right to supplement or modify this rebuttal should additional information become available.

Please if you have any questions, do not hesitate to contact me at 703 822 5017.

Sincerely,

Angel Tabe.

P/S: Emailed as directed by Ms Mattie Whitfield



**Who is Will Smith married to?**
Answer for a FREE* WAL-MART® Gift Card!

Jada Pinkett    Jennifer Lopez    Halle Berry
must complete 1 offer                                    ©2007 GiftCardFreebies.com

Windows Live™   Home   **Hotmail**   Spaces   OneCare _____   richangels@hotm...   Sign out

Inbox | New | Reply | Reply all | Forward | X Delete | Junk | Move to | Options

Inbox
Junk
Drafts
Sent
Deleted
  Afr.Union
  AlliedBarton
  Business
  EEOC
  EEOC-ALLIEDBART...
  Family
  Family2
  Follow-Up
  Miscellaneous
  official
  Professional
  REAL ESTATE
  Southern Cameroons

Manage folders

  Today
  Mail
  Contacts
  Calendar



**RE: EEOC Charge No. 100-2005-00835**
From: **MATTIE WHITFIELD (MATTIE.WHITFIELD@EEOC.GOV)**
Sent: Wed 8/08/07 2:17 PM
To: Angel Tabe (richangels@hotmail.com)

** High Priority **

Ms. Tabe:

Thanks for replying, but I do need a telephone number for you. We cannot forward anything in your charge file while it is still active. Once the charge is closed, you can request a copy of your charge file for filing purposes in court only. I will forward a copy of the new Fact Finding letter to you through email with the new date of August 23, 2007 @10:00 in our Baltimore, MD office. Your legal counsel should forward me a letter of representation on or before the conference. We still need to talk verbally prior to the conference date.

>>> "Angel Tabe" <richangels@hotmail.com> 8/8/2007 1:41 PM >>>
Dear Ms Whitfield: 08/08/07 Thank you for your last email communications, and particularly for postponing the investigative conference. Like I said in my earlier, I do not feel comfortable proceeding with my case without counsel, especially under the pressure you seem to be putting me. Ever since the purported phone call from my former employer's attorney that they MIGHT be interested in settling without the investigative conference, you have required me to act "as soon as possible* send me the required information ... let me know right away*" Please, bear with me that the issues involved, such as assessing damages, are matters that I do not properly grasp, and I do not readily have the information pertaining to that. My counsel who will be helping me out will get to you. On the other hand, I believe a concrete, reasonable offer by my former employer could show commitment, good faith, and move us forward as well. 2. You also mentioned notes in my file indicating that neither me nor my legal representative showed up for the mediation that was scheduled while my charge was in the Washington Field Office. This is very hot news to me, and I cannot even guess what else is in my file! After I made my charge in 2005, I attempted several times to contact the initial investigator, Ms Elisa Cogswell by phone, emails, and physical visits to the DC Field Office, for purposes of keeping abreast with the progress of the matter. Only once did I get in touch directly with Ms Cogswell, who updated her email address through which I too updated my contacts when my initial address changed. I was never notified of any mediation anywhere, and it was indeed after a very long silence that I received from you in late March 2007, the Barton Position Statement of May 2005, not even understanding how or why it was coming from Baltimore, But of course I do appreciate, and remain grateful to you for that. Like I just mentioned above, I cannot even guess what else is in my file right now. In order to enable us all be on the same playing field, i. e. to be equally updated on the evolution and progress of the case since the charge was filed, could you please send to my mailing address, copies of ALL documents in my file, beginning with the initial charge and including notes like the ones you mentioned? Also fax copies to # 202 , 955 1101, to the attention of Ms. Polydor. Thank you. Please, you do not have three addresses on me, and you have never had. I stated clearly in my email that I received the notice of the 26th on the 28th, and that was at my mailing address. But the notice also stated clearly that the fact-finding conference was being RESCHEDULED, and I had no idea when it was originally scheduled. I hope this is clear now. Thank you once more, and please let me know (preferably by email me) all there is for me to know. Sincerely, Angel Tabe.

07 2043

From: "MATTIE WHITFIELD" <MATTIE.WHITFIELD@EEOC.GOV>
To: "Angel Tabe" <richangels@hotmail.com>
Subject: RE: EEOC Charge No. 100-2005-00835
Date: Tue, 07 Aug 2007 08:25:34 -0400
>** High Priority **
>
>Ms. Tabe
>

**FILED**

NOV 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

>Could you please send me a telephone number so that I may call you or
>can you call me at (410) 209-2752 . I have postponed the Fact Finding
>Conference until August 23, 2007. Please confirm this date with me.
>
> >>> "Angel Tabe" <richangels@hotmail.com> 8/1/2007 6:20 PM >>>
>Dear Ms Whitfield: I wish to acknowledge receipt of the 7/26/07 notice
>RESCHEDULING the fact-finding conference on the 7/28/07. Please be
>advised that I never received the original scheduling notice. I am
>therefore requesting that the conference be rescheduled to enable me
>retain counsel to assist me in this matter. Thank you and sincerely,
>Angel Tabe.
>
>
>
>
>
>From: "MATTIE WHITFIELD" <MATTIE.WHITFIELD@EEOC.GOV>
>To: <richangels@hotmail.com>
>Subject: EEOC Charge No. 100-2005-00835
>Date: Wed, 01 Aug 2007 11:36:32 -0400
> >** High Priority **
> >
> >Ms. Tabe:
> >
> >I sent you a letter dated July 26, 2007, about a Fact Finding
> >Conference to be held on next Thursday, August 9, 2007, in
>Baltimore,
> >MD at 10:00 am. See attached. In the mean time I got a call from
>the
> >attorney representing your former employer. They might be interested
>in
> >settling this case without the conference. I need to know what you
>are
> >seeking for damages in this case as: to lost wages, date when you
>found
> >another job and started working; how much you were making before and
>how
> >much you are making now. Any attorney fees supported by a bill, pain
> >and suffering supported by medical bills. Please let me know as soon
>as
> >possible, so that I can get back with the employer's attorney.
> >
> ><< NOTICEOFFACTFINDINGCONFERENCEAngelTabe.doc >>
> >
> >
>Don't get caught with egg on your face. Play Chicktionary!

Learn.Laugh.Share. Reallivemoms is right place!

     Reply   Reply all   Forward   Delete      Move to

Want to race through your inbox even faster? Try the full version of Windows Live Hotmail. (It's free, too.)

© 2007 Microsoft | Privacy | Legal                                    Help Central | Account | Feedback



Cheryl Polydor, Esq.
Attorney at Law
John Berry P.L.L.C.
1990 M Street, N.W., Suite 610
Washington, D.C 20036

Tel.        (202) 955-1100

This communication may be privileged and confidential. If you receive this e-mail by mistake please delete it and
kindly notify the sender.

**From:** Angel Tabe [mailto:richangels@hotmail.com]
**Sent:** Saturday, September 22, 2007 4:04 PM
**To:** Cheryl Polydor
**Subject:** RE: Fact finding Conference

Dear Cheryl:

I have been away to some seminars, so I am only seeing this now, and will need to look some more later.

I am sorry that I get confused, but the demand letter, which has been an on-going process, should naturally
continue. It can't be abandoned now, since you had said would be ready by yesterday, Friday 9/20.

I know that your goal is to do what is best for me, but you realise that I am in my present situation only because
AlliedBarton did not document their decisions. These are the same people speaking through Mattie, who herself
says things and refuses - or forgets - even something she wrote down. So you see I am wary because you know,
once bitten,... That too is my concern about the settlement - OFFER?

I hope I have a case that I have been wronged. I just want the wrong that has been done me corrected, and I
am counting on you for that to happen. Thank you, and please feel free to call me anytime - 202 468 9480.

Angel.

**Subject:** RE: Fact finding Conference
**Date:** Thu, 20 Sep 2007 11:57:13 -0400
**From:** cpolydor@worklaws.com
**To:** richangels@hotmail.com

Dear Angel,

I will try to answer your questions in turn, and we can discuss any of these issues further at any time, as well.
First, the "right to sue" letter actually is irrelevant, as you already have the right to file suit in federal court,
because the EEOC failed to complete the investigation of your complaint within the statutory time frame. So the
only question here is whether and when to file suit.

07 2043

Regarding the fact-finding conference, Mattie has reported that the company has encouraged us to submit a
settlement proposal, but that if we decide to go ahead with the fact-finding conference, they will not be prepared to
discuss settlement at the conference (perhaps because of the costs they will incur if they must send legal counsel
to the conference). The only possible benefit I see to the conference for us is perhaps to gain some additional
information regarding the company's legal arguments in your case; however, I believe we already know quite a bit
about that. I do not believe the conference would be a good use of my time (and your attorney fees), given that
my time for preparing for, attending, and traveling to and from Baltimore for, the conference, will probably b
approximately 10 hours.

**FILED**

N[...] 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Thanks,

Cheryl


Cheryl Polydor, Esq.
Attorney at Law
John Berry P.L.L.C.
1990 M Street, N.W., Suite 610
Washington, D.C 20036

Tel.      (202) 955-1100

This communication may be privileged and confidential. If you receive this e-mail by mistake please delete it and kindly
notify the sender.


**From:** Angel Tabe [mailto:richangels@hotmail.com]
**Sent:** Tuesday, September 18, 2007 1:51 PM
**To:** Cheryl Polydor
**Cc:** richangels@hotmail.com
**Subject:** RE: Fact finding Conference


Dear Ms. Polydor:

Thank you for your mail, as I still await your call.

You recommend that we decline the conference, and send a demand letter to my former
employer, in response to their settlement proposal.

1) Have you received a settlement proposal from my former employer? If so please,
could you send me a copy? Thanks.


Angel.


**Subject:** RE: Fact finding Conference and Background
**Date:** Mon, 17 Sep 2007 18:27:10 -0400
**From:** cpolydor@worklaws.com
**To:** richangels@hotmail.com

Angel,

*07 2043*

Good to hear from you. I had hoped to call you earlier today, but I got called in to handle an emergency in a new
case today (actually still handling ~~it~~ ........................conference, and as discussed, send a
demand letter to your former employer, in response to their settlement proposal.

**FILED**

Thank you for the timeline. I will call you tomorrow to discuss all of the above.

NOV 1

NANCY MAYER WHITTINGTON CLERK
U.S. DISTRICT COURT

EEOC Form 161 (3/98)

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Angel Tabe<br>C/O 614 Ethan Allen Avenue<br>Takoma Park, MD 20912 | From: | Baltimore Field Office<br>10 South Howard Street<br>3rd Floor<br>Baltimore, MD 21201 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |

| EEOC Charge No. | EEOC Representative | | Telephone No. |
|---|---|---|---|
| 100-2005-00835 | Mattie J. Whitfield,<br>Investigator | | (410) 209-2752 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge. |
| [ ] | While reasonable efforts were made to locate you, we were not able to do so. |
| [ ] | You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged. |
| [ ] | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Judy Wasselfor*

**Gerald S. Kiel,**
**Director**

SEP 2 8 2007

(Date Mailed)

Enclosures(s)

cc:    Ms. Donna Keeton
Martenson, Hasbrouck & Simon LLP
Attorneys At Law
3379 Peachtree Road, N.E, Ste. 400
Atlanta, GA 30326

07 2043

# FILED

NOV 1 3

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days of the date you *receive* this Notice.** Therefore, you should **keep a record of this date.** Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office. If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit
**before 7/1/02** – *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if
you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed
within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Baltimore Field Office**

City Crescent Building
10 South Howard Street, 3rd Floor
Baltimore, MD 21201
(410) 962-3932
TTY (410) 962-6065
FAX (410) 209-2221

SEP 2 8 2007

Ms. Angel Tabe
C/O 614 Ethan Allen Avenue
Takoma Park, MD 20912

Re: Angel Tabe v. Allied Barton Security Services
EEOC Charge No. 100-2005-00835

Dear Ms. Tabe:

The investigation of your charge of employment discrimination has been completed. This letter is pursuant to the fact that an investigation has been conducted regarding the allegations of your charge and serves as a predetermination letter for you with respect to the above-mentioned charge of discrimination. A copy of the position statement was sent to you on **January 23, 2007,** for your review and your rebuttal was received and received. An analysis of the evidence submitted by your employer was evaluated under the statute and models of proof.

You stated that you had been discriminated against because of your sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended and because of your disability in violation of Title I of the Americans With Disabilities Act of 1990, with respect to harassment, failure to accommodate and discharge.

Respondent submitted documentation to show that you were not terminated. Respondent stated that you resigned from your job on November 23, 2004. You were not denied reasonable accommodations because you never attended the meeting with Mr. Beresford to discuss your accommodations on November 29, 2004. After you submitted your medical documentation to support your medical condition, you were informed by the Operations Manager to setup this meeting with Mr. Beresford in order to be evaluated for the reasonable accommodations, but you never did that. You were told by Respondent that you could not wear the back brace outside of your uniform, nor could you wear a uniform one size too big because it looked sloppy. You were told that you had to go home until you brought in the medical documentation to return to work. Respondent made several attempts to contact you to set up this meeting. Several messages were left but you never returned their calls. Finally, on November 23, 2004, Respondent was able to talk with you over the telephone about setting up the meeting with the Mr. Beresford for November 29, 2004. Respondent indicated that on November 25, 2004, they received a letter from you stating that you would not be attending the meeting. Respondent indicated that you failed to cooperate fully with the interactive process with the Respondent as instructed.

On September 24, 2007, your attorney sent an email, stating that the proposed settlement offer would be forthcoming in a few days. It was never received.

Based on the documented evidence submitted during the course of the investigation, the facts are not supported by the evidence. Due to the lack of evidence to rebut the allegations on the

basis of your sex and disability, discriminatory practices cannot be established.   Therefore, we are unable to establish any violation was committed.

Based on an analysis of the evidence, the Commission will not pursue further investigation of this charge. You now have the right to file a lawsuit against the Respondent within **90 days** from the date you receive the Notice of Right to Sue and Dismissal.  If you fail to file suit within the appropriate time, you will lose your right to pursue this matter in court.

Sincerely,


Mattie J. Whitfield
Investigator
(410) 209-2752
Www.mattie.whitfield@eeoc.gov

Enclosure:
Dismissal and Notice of Rights


Lasik**Plus** ✛
VISION CENTER

Don't settle.
Learn about
Lasik**Plus**

FREE
Lasik Exam
click here

Windows Live™    Home    Hotbox    Spaces    OneCare    <!-- search --> richangels@hotm...    Sign out

Inbox
Junk
Drafts
Sent
Deleted
Afr.Union
AlliedBarton
Business
EEOC
EEOC-ALLIEDBART...
Family
Family2
Follow-Up
Miscellaneous
official
Professional
REAL ESTATE
Southern Cameroons
Manage folders
Today
Mail
Contacts
Calendar

New    Reply    Reply all    Forward    ✗ Delete    Move to    Options

### RE: Fact finding Conference

From: **Angel Tabe** (richangels@hotmail.com)
Sent: Thu 9/20/07 10:53 AM
Reply-to: richangels@hotmail.com
To: Cheryl Polydor (cpolydor@worklaws.com)

Hi Cheryl:

Good morning.

I have been trying to process our last discussion in my head and I actually have some concerns. First of all, the last notice which says:

"If you do not appear or wish not to participate in Fact Finding Conference, EEOC will assume that you are not interested in the resolving this matter and the Charge will be close. Your Notice of Right to Sue will be forthcoming. Please confirm your attendance to the conference by **Tuesday, September 18, 2007.**"

To me, this does not sound like Mattie discourages the conference while advising settlement as per your discussion with her. I would be more comfortable if she put her advice in writing. My fear is that the Right of Notice to Sue will follow this conference notice. Now, if it is expensive to attend the conference, isn't it more expensive to prepare the suit...and not sue? I agree that we should go for settlement, but where, or what is the offer? I made the charge, I shouldn't be offering for settlement, should I?

I just felt we could still attend the conference, since as you said earlier, it doesn't prevent settlement negotiations which can be embarked upon at any stage of the charge. Moreover, until there is something in writing since settlement, we don't have any ... why not attend the conference?

Do let me know please.

Thanks, and do have yourself a nice day.

Angel.

Subject: RE: Fact finding Conference
Date: Tue, 18 Sep 2007 13:53:56 -0400
From: cpolydor@worklaws.com
To: richangels@hotmail.com

Angel – That was what I was going to check with you! I am eating lunch, but will call you shorly.