UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGEL TABE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-02043 (RMU) |
| | ) |
| ALLIED BARTON SECURITY SERVICES, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

COMES NOW Defendant AlliedBarton Security Services, LLC ("Defendant" or "AlliedBarton") and responds to Plaintiff's Motion for Leave to File Amended Complaint as follows:

## I.      INTRODUCTION

Plaintiff Angel Tabe ("Plaintiff") filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 13, 2005.  (*See* Exhibit 4 to Plaintiff's Complaint, Doc. 1.)  On or about September 28, 2007, the EEOC issued a Dismissal and Notice of Rights to Plaintiff, notifying Plaintiff that it was dismissing Plaintiff's Charge because Plaintiff "failed to provide information, failed to appear or be available for interview/conference, or otherwise failed to cooperate to the extent that it was not possible to resolve [her] charge."  (*See* Exhibit 10 to Plaintiff's Complaint, Doc. 1.)

On November 2, 2007, Plaintiff filed a Complaint, *pro se*, in the United States District Court for the District of Columbia purportedly setting forth a single "cause of action for discrimination solely on account of [her] disability in contravention of the Americans with Disability Act of 1990" (the "ADA").  (*See* Complaint, Doc. 1.)  Defendant timely responded to

Plaintiff's Complaint on December 5, 2007. (*See* Defendant's Answer and Affirmative Defenses, Doc. 2.) Plaintiff subsequently retained counsel, who entered an appearance on behalf of Plaintiff on January 14, 2008. (Doc. 3.)

Thereafter, counsel for both parties conferred and submitted their Joint Meet and Confer Statement on March 6, 2008. (Doc. 11.) An initial status hearing was held and the Court issued a Civil Scheduling Order on March 13, 2008, which established, *inter alia*, the deadline for filing any motions to amend or join parties as May 9, 2008. (*See* Doc. 12.) Pursuant to that Civil Scheduling Order, on May 9, 2008, Plaintiff filed a Motion for Leave to File Amended Complaint ("Motion to Amend"), with her proposed Amended Verified Complaint (the "Proposed Complaint"). (*See* Doc. 16.)

In her Proposed Complaint, Plaintiff seeks to add numerous factual allegations that pre-date her employment with AlliedBarton. (*See* Doc. 16, at Exhibit 1, ¶¶ 5-54.) Plaintiff's Proposed Complaint also attempts to assert claims for gender discrimination and/or sexual harassment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and the District of Columbia Human Rights Act, District of Columbia Code §§ 2-1401.01 et seq. ("DCHRA"). (*See id.*) However, as discussed herein, Plaintiff's Motion for Leave should be denied due to Plaintiff's failure to confer with Defendant pursuant to Local Civil Rule 7(m), and the futility of Plaintiff's proposed amendments.

## II.    ARGUMENT

### A.    Plaintiff's Motion To Amend Should Be Denied Due To Plaintiff's Failure To Comply With The Court's Local Rules.

Pursuant to Local Civil Rule 7(m), "[b]efore filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good faith effort to determine whether there is any opposing to the relief sought

and, if there is opposition, to narrow the areas of disagreement." L. Cv. R. 7(m). In this case, Plaintiff's counsel informed Defendant's counsel that Plaintiff intended to seek leave to amend her Complaint on or about February 21, 2008, and asked whether Defendant would consent to a motion seeking leave to amend. (*See* Declaration of Donna L. Keeton, attached hereto as Exhibit 1, at ¶¶ 3-4.) In response, Defendant's counsel stated that Defendant could not consent without knowing what amendments Plaintiff may seek, but would consider Plaintiff's request if Plaintiff would submit her proposed amended complaint to Defendant's counsel for review. (*Id.* at ¶ 4.)

Over two (2) months later, at approximately 6:00 p.m. on May 8, 2008 – *the day before any motions to amend were due* (*see* Doc. 12) – Plaintiff's counsel sent Defendant's counsel an e-mail with a proposed amended complaint and asked that Defendant's counsel review the draft and inform Plaintiff's counsel "by noon tomorrow" whether Defendant would consent to Plaintiff's motion for leave. (*See* Exhibit 1 at ¶ 5, and Exhibit A thereto.) That proposed amended complaint contained numerous factual allegations that had not been included in Plaintiff's original Complaint, and also contained an additional cause of action for "Violation of D.C. Wage Payment Law," D.C. Code § 32-1301 *et seq.* (*See* Exhibit 1 at ¶ 5, and Exhibit B thereto.)

The next morning, May 9, 2008, Defendant's counsel informed Plaintiff's counsel that she had just returned from several days out of the office, and that she would respond to Plaintiff's counsel regarding the proposed amended complaint by 3:00 p.m. that day. (*See* Exhibit 1 at ¶ 6, and Exhibit C thereto.) At approximately 2:15 p.m. on May 9, 2008, Defendant's counsel telephoned Plaintiff's counsel regarding Plaintiff's proposed cause of action for "Violation of D.C. Wage Payment Law," noting that Plaintiff's proposed claim was time-barred since Plaintiff's employment with AlliedBarton ended more than three (3) years earlier in

November 2004. (Exhibit 1 at ¶ 7.) Plaintiff's counsel, therefore, agreed to remove that claim and send Defendant's counsel a revised amended complaint for review. (*Id*., and Exhibit D thereto.) However, as of 5:00 p.m., Defendant's counsel still had not received Plaintiff's revised amended complaint. (*Id*. at ¶ 9.) Accordingly, Defendant's counsel informed Plaintiff's counsel that, in light of the fact that it was after 5:00 p.m. (on a Friday), counsel would "be unable to confirm whether or not Defendant will consent to any such amended complaint until next week." (*See id*. at ¶ 9, and Exhibit E thereto.) Later that evening, Plaintiff apparently filed her Motion to Amend. (Doc. 16.)

At no time prior to the eleventh-hour filing of her Motion to Amend did Plaintiff inform Defendant that she intended to amend her Complaint to assert any gender discrimination and/or sexual harassment claims. (Exhibit 1 at ¶ 10.) Indeed, even in Plaintiff's Motion to Amend, Plaintiff admits that she never submitted her proposed causes of action for gender discrimination to Defendant to determine whether Defendant would consent prior to filing her Motion to Amend. (*See* Plaintiff's Motion to Amend, Doc. 16, at ¶ 14 (stating that Defendant's counsel "has been sent a draft of the Amended Complaint (without the sexual harassment counts)").)

Plaintiff was aware of the May 9, 2008 deadline for amending her Complaint for almost two (2) months before she filed her Motion to Amend. Plaintiff's counsel had also stated an intent to amend the Complaint approximately two (2) months before any amendments were due. Yet, Plaintiff waited until the day before the deadline for amendments– and 6:00 p.m. on that day – to attempt to confer with Defendant regarding her proposed amendments, and even those proposed amendments were not the ones that Plaintiff subsequently submitted to the Court. Therefore, Plaintiff's Motion for Leave should be denied due to Plaintiff's failure to comply with Local Civil Rule 7(m), which required Plaintiff's counsel to confer with Defendant's counsel

regarding the proposed motion.[1]  S*ee United States ex rel. Pogue v. Diabetes Treatment Ctr. of Am.*, 235 F.R.D. 521 (D.D.C. 2006) (denying nondispositive motion on grounds that movant failed to confer with opposing counsel in a good faith effort to resolve or narrow dispute prior to filing motion).

### B.    Plaintiff's Motion To Amend Her Complaint Should Be Denied As Futile.

Even assuming Plaintiff's counsel had complied with Local Civil Rule 7(m), Plaintiff's Motion to Amend should still be denied because Plaintiff's proposed amendments are futile. While Federal Rule of Civil Procedure 15(a) states that leave to amend should "be freely given when justice so requires," leave to amend should be denied if there is "futility of amendment, delay, bad faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by previous amendments."  *Amore v. Accor North Am., Inc.*, 529 F. Supp. 2d 85, 92 (D.D.C. 2008) (Urbina, J.).  "An amended complaint is futile if it … could not withstand a motion to dismiss." *Id*.; *see also Willoughby v. Potomac Elect. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996) (affirming denial of plaintiff's motion to amend complaint because amendment would be futile).

In this case, Plaintiff's Motion to Amend should be denied because Plaintiff's proposed additional causes of action fail as a matter of law and, thus, are futile.  Specifically, Plaintiff's

---

[1] Plaintiff asserts that she "apprised defendant of all the essential elements of all her claims in the Amended Complaint" in a "demand letter" purportedly sent "on April 22, 2008."  (*See* Doc. 16 at ¶ 12.)  However, that "demand letter" – which is actually dated April 21, 2008, and which Defendant is not submitting since Plaintiff's counsel identified it as "Privileged and Confidential – For Settlement Purposes Only" – did not state that Plaintiff intended to add any claims for gender discrimination to her Complaint.  Moreover, even assuming it had, Local Civil Rule 7(m) requires that counsel confer "either in person or by telephone" prior to filing any nondispositive motion.  *See* L. Cv. R. 7(m).  Thus, Plaintiff's "demand letter" could not fulfill the Local Rule's requirement that counsel confer in good faith regarding Plaintiff's Motion to Amend.  *See Equal Rights Ctr. v. Post Properties, Inc.*, 246 F.R.D. 29 (D.D.C. 2007) ("The Local Rule is clear that compliance with the duty to confer requirement necessitates something more than an exchange of letters or a chain of e-mail correspondence; if the moving party does not discuss the anticipated motion with opposing counsel 'in person or by telephone,' then she has not followed the rule and the court may dismiss her motion.").

proposed Title VII claim for gender discrimination, Count II of her Proposed Complaint, is futile because Plaintiff failed to exhaust her administrative remedies with regard to such claim. Similarly, Plaintiff's claim for gender discrimination under the DCHRA, Count III of her Proposed Complaint, is futile because Plaintiff's claim is untimely.[2]

    1. <u>Plaintiff's Title VII gender discrimination claim is futile because Plaintiff failed to exhaust her administrative remedies.</u>

   As a prerequisite to bringing a Title VII gender discrimination claim, a plaintiff is required to file a charge of discrimination with the EEOC within 300 days of the alleged misconduct. *See* 42 U.S.C. § 2000e-5(e)(1). If a plaintiff fails to file a charge of discrimination before the allotted time elapses, her claim is untimely and she is procedurally barred from pursuing the claim for failure to exhaust her administrative remedies. *See, e.g.*, *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 91 (D.D.C. 2007) (holding that claims arising from actions that occurred more than 300 days before filing of EEOC charge are time-barred).

   In this case, Plaintiff checked the boxes for both "Disability" and "Sex" on her EEOC Charge. (*See* Doc. 1, at Exhibit 4 thereto.) However, contrary to Plaintiff's suggestion, (*see* Doc. 16 at ¶ 8), the mere fact that Plaintiff checked the box for "Sex" is not sufficient to establish that Plaintiff exhausted her administrative remedies with regard to her proposed Title VII gender discrimination/sexual harassment claim. (*See* Doc. 16 at ¶ 7.) Rather, "a plaintiff must state her charges with some degree of specificity." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir.

---

[2] Plaintiff's addition of claims for gender discrimination/sexual harassment after Defendant's counsel had noted that her original proposed claim for unpaid vacation was time-barred, without conferring with Defendant's counsel regarding her intent to include such claims, could also be considered bad faith on the part of Plaintiff and constitute further grounds for denying Plaintiff's Motion to Amend. *See Simpson v. Socialist People's Libyan Arab Jamahiriya*, 529 F. Supp. 2d 80, (D.D.C. 2008) (plaintiff's changing legal basis for her proposed claims in the middle of briefing "reveals a lack of preparation and conscientiousness to legal arguments betokening bad faith").

1995).  Thus, an "EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals*."  *Carroll v. England*, 321 F. Supp. 2d 58, 65 (D.D.C. 2004) (internal quotations and citation omitted); *see also Chacko v. Patuxent Institution,* 429 F.3d 505, 509 (4th Cir. 2005) (dismissing the plaintiff's hostile work environment claim as to co-worker harassment where the plaintiff had alleged a hostile work environment claim only as to supervisors in his charge of discrimination); *Adams v. Giant Food, Inc.*, 225 F.Supp.2d 600, 604-05 (D.Md. 2002) (dismissing retaliation claim based on failure to exhaust administrative remedies, despite that plaintiff checked the box for retaliation in his EEOC charge, because he did not make any allegations of retaliatory conduct in the narrative portion of the charge).  "[A] court should not interpret an administrative charge so liberally as to permit a plaintiff to bypass the Title VII administrative process."  *Park*, 71 F.3d at 907.

In this case, Plaintiff alleged in her EEOC Charge the following:  that she was employed by AlliedBarton from July 1, 2004, through November 10, 2004; that she was denied an "accommodation" of a sitting position during the summer of 2004; that she was escorted out of her work site on November 4, 2004, after allegedly being told that "the prescribed devices used to aid [her] with [her] disability 'did not present well' with [her] uniform"; that, on November 10, 2004, when she presented a doctor's note regarding her alleged need for "the prescribed medical devices," she was told she "could no longer work here"; and that AlliedBarton requested a meeting with her, and, after she responded to that request in writing, she "never heard from [AlliedBarton] again."  (Doc. 1 at Exhibit 4 thereto.)

Although Plaintiff's Charge contained a conclusory assertion that Plaintiff "believe[s]" that she was discriminated against "because of [her] gender (female)," her Charge contains no allegations that would support such conclusory assertion.  (*See id.*)  For example, Plaintiff's

EEOC Charge did not identify any specific employment action that Plaintiff believed was taken against her because of her gender and did not allege that any similarly situated male employees were treated more favorably with regard to any action. *See Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006) (holding that claim for disparate treatment sex discrimination was not sufficiently "like or reasonably related to" claims in EEOC charges since charges "allege no facts concerning treatment of male employees"). Indeed, the EEOC clearly did not interpret Plaintiff's Charge as containing a claim for any type of sex discrimination, or even any claim under Title VII, as evidenced by the Notice of Charge of Discrimination that was sent to AlliedBarton, which indicated that Plaintiff was asserting claims *only* under the ADA and identified *only* "Disability" as the "circumstances of alleged discrimination." (*See* EEOC Notice of Charge of Discrimination, dated April 22, 2005, attached hereto as Exhibit 2.)

Plaintiff also failed to allege any facts in her EEOC Charge that would suggest that any AlliedBarton employee sexually harassed her. (Doc. 1, at Exhibit 4 thereto.) Thus, even assuming *arguendo* that Plaintiff's Charge might be interpreted as containing any type of sex discrimination claim, a disparate treatment sex discrimination claim is not sufficiently related to a claim for sexual harassment so as to satisfy Title VII's exhaustion requirement. *See, e.g.*, *Park*, 71 F.3d at 907-09 (holding that national origin hostile work environment claim was not within the scope of administrative complaint alleging national origin discrimination); *Christopher v. Billington*, 43 F. Supp. 2d 39, 47-48 (D.D.C. 1999) ("The mere assertion of sex discrimination in plaintiff's administrative complaint – in the absence of factual or legal allegations of a sexual harassment claim – is insufficient to support a claim of a hostile work environment.")

None of the allegations upon which Plaintiff is now attempting to base gender discrimination and/or sexual harassment claims in her Proposed Complaint (*see, e.g.*, Doc. 16,

Plaintiff's Proposed Complaint at ¶¶ 14-15, 22-24, 39-40, 52, 155-57, 163-67), were identified in her EEOC Charge.[3]  Nor did Plaintiff otherwise properly assert a sex discrimination and/or sexual harassment claim in her EEOC Charge.  Accordingly, Plaintiff's Motion to Amend should be denied on the grounds that Plaintiff's proposed Title VII claim for gender discrimination/sexual harassment is barred due to Plaintiff's failure to exhaust her administrative remedies.

> 2.    Plaintiff's gender discrimination claim under the DCHRA is time-barred and, thus, futile.

Pursuant to the express language of the DCHRA, an individual who wishes to pursue a private cause of action for employment discrimination under the DCHRA is required to file her lawsuit regarding such conduct "within one year of the unlawful discriminatory act."  *See* D.C. Code § 2-1403.16(a).  Alternatively, an individual may file an administrative complaint with the District of Columbia Office of Human Rights ("DCOHR") within one year of the alleged unlawful conduct.  *See* D.C. Code § 2-1403.04(a).  If an individual files an administrative complaint with the DCOHR, the individual cannot pursue a private cause of action unless the DCOHR "has dismissed such complaint on the grounds of administrative convenience, or where the complainant has withdrawn a complaint," in which case the individual "shall maintain all rights to bring suit as if no complaint had been filed."  *See* D.C. Code § 2-1403.16(a).

In this case, the last act of alleged discrimination occurred in November 2004.  (See Doc. 16, Proposed Complaint at ¶¶ 122, 129; *see also* Doc. 1.)  Plaintiff, however, did not initiate her lawsuit until November 13, 2007, approximately three (3) years later.  (*See* Doc. 1.)  Therefore, even assuming Plaintiff's proposed amendments might relate back to the filing of her original

---

[3]    Indeed, as discussed in Section II(C) below, the vast majority of allegations relating to Plaintiff's proposed gender discrimination/sexual harassment claim pre-date Plaintiff's employment with Defendant.  (*See, e.g.*, Doc. 16, Plaintiff's Proposed Complaint at ¶¶ 9-54.)

Complaint – which they do not[4] – Plaintiff's proposed claim under the DCHRA is untimely by almost two (2) years and, accordingly, fails as a matter of law. *See Willoughby*, 100 F.3d at 1003 (holding that plaintiff's DCHRA claim was time-barred because he did not seek to amend his complaint to add a DCHRA claim until more than one year after his termination).

In an unavailing attempt to save her patently untimely claim, Plaintiff argues that her DCHRA claim for sex discrimination/sexual harassment was tolled by Plaintiff's filing of an EEOC Charge in April 2005, and cites a District of Columbia Court of Appeals case, *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564 (D.C. App. 2007), in support of that argument. (*See* Doc. 16 at ¶ 9.) However, Plaintiff's citation of *Griffin* in support of her tolling argument is misleading because, contrary to Plaintiff's suggestion, the District of Columbia Court of Appeals did not hold that an EEOC charge tolls the DCHRA's statute of limitations pursuant to the worksharing agreement between the agencies. (*See* Doc. 16, at ¶ 9.)

Rather, the *Griffin* case actually holds that, while an EEOC charge is automatically cross-filed with the DCOHR pursuant to the agencies' worksharing agreement, the DCOHR automatically and immediately terminates its processing of the charge, deferring jurisdiction to the EEOC to investigate the allegations. 925 A.2d at 573. Such termination constitutes dismissal of the complaint for "administrative convenience" for purposes of the DCHRA, such that the complainant is free to pursue a private cause of action "as if no complaint had been filed." *Id*. (internal quotations and citation omitted).

---

[4] None of the factual allegations allegedly supporting Plaintiff's gender discrimination/sexual harassment claim were set forth – even in a conclusory fashion – in Plaintiff's original Complaint. (*See* Doc. 16, Plaintiff's Proposed Complaint at ¶¶ 14-15, 22-24, 39-40, 52, 155-57, 163-67.) Thus, Plaintiff's proposed gender discrimination/sexual harassment claims do not arise out of the same conduct, transaction or occurrence alleged in Plaintiff's original Complaint such as is required for Plaintiff's proposed amendments to relate back to the filing of her original Complaint. *See* Fed. R. Civ. P. 15(c).

The *Griffin* case did not directly address whether the DCHRA's tolling provision would apply when a charge is originally filed with the EEOC since the plaintiff in *Griffin* had filed a lawsuit within one year of the alleged discriminatory conduct.  925 A.2d at 574.  However, Plaintiff's argument has, in fact, been expressly rejected by other federal courts within this Circuit.  *See, e.g.*, *Bailey v. Verizon Commun. Inc.*, ___ F. Supp. 2d ___, 2008 WL 1723940, Civil Action No. 07-1494 (RCL), at *4 (D.D.C. Apr. 14, 2008) ("[F]iling an EEOC charge does not toll the running of the DCHRA's one-year statute of limitations."); *Kamen v. International Bhd. of Elect. Workers (IBEW), AFL-CIO*, 505 F. Supp. 2d 66, 76-77 (D.D.C. 2007) (rejecting argument that EEOC charge tolls DCHRA's statute of limitations in light of "controlling precedent of the D.C. Court of Appeals and the United States Court of Appeals for the District of Columbia Circuit").  Moreover, even assuming the filing of an EEOC Charge might toll the DCHRA's statute of limitations, such tolling would not save Plaintiff's untimely claims because the statute of limitations is only tolled while the administrative complaint "is pending."  *See* D.C. Code § 2-1403.16(a).

Pursuant to the express holding in *Griffin*, when a charge is originally filed with the EEOC, as was the case here (*see* Doc. 1, at Exhibit 4 thereto), the EEOC-DCOHR worksharing agreement results in the automatic and simultaneous filing *and termination* of a complaint with the DCOHR.  *See* 925 A.2d at 574.  Therefore, Plaintiff's EEOC Charge was filed with the DCOHR and immediately dismissed by the DCOHR when Plaintiff originally filed her Charge with the EEOC in April 2005, such that Plaintiff's complaint was no longer "pending" with the

DCOHR as of April 2005.  *See id at 575; see also* D.C. Code § 2-1403.16(a).[5]  Plaintiff, however, did not seek to pursue any DCHRA claims until more than three (3) years later when she filed her Motion to Amend on May 9, 2008.  (*See* Doc. 16, Plaintiff's Proposed Complaint.)  Accordingly, Plaintiff's Motion to Amend should be denied as futile to the extent Plaintiff seeks leave to add any claim(s) under the DCHRA.[6]

###### C. Plaintiff's Motion To Amend Should Be Denied To The Extent Plaintiff's Proposed Allegations Pre-Date Plaintiff's Employment With Defendant.

Plaintiff's Motion to Amend should also be denied to the extent that Plaintiff is attempting to add various allegations that pre-date her employment with AlliedBarton and that otherwise cannot form the basis of any claim against AlliedBarton.  For example, in paragraphs 9-52 of her Proposed Complaint, Plaintiff makes various assertions regarding actions allegedly committed by Plaintiff's previous employer, The Wackenhut Corporation ("Wackenhut"), and/or employees of Wackenhut between September 2001 and June 2004.  (*See* Doc. 16, Exhibit 1 thereto.)  Wackenhut, however, is not a defendant in this matter.

Plaintiff admits that AlliedBarton did not begin providing services at Plaintiff's work site until July 1, 2004, and that she (and the alleged harasser) did not become an employee of AlliedBarton until July 1, 2004.  (*See id.* at ¶¶ 53-54.)  AlliedBarton cannot, as a matter of law, be liable for any alleged conduct of Plaintiff's previous employer and/or employees of Plaintiff's

---

[5] Notably, the D.C. Court of Appeals' discussion of the procedural history of the plaintiff's claims in the *Griffin* case supports the conclusion that, had the tolling issue been properly before the Court of Appeals, the Court would have held that the DCHRA's statute of limitation is not tolled by the filing of an EEOC charge.  *See* 925 A.2d at 570 (noting that, in a previous federal lawsuit, the district court held that the filing of an EEOC charge did not save the plaintiff's sex discrimination claims because, at best, the plaintiff's claims were tolled by one day since the DCOHR "action was in effect initiated and terminated in the DCOHR on the same day").

[6] Moreover, even if the DCHRA's tolling provision were applicable here, Plaintiff's DCHRA gender discrimination/sexual harassment claim is still futile because such claim is not reasonably related to the claims asserted in Plaintiff's EEOC Charge; thus, there was no complaint "pending" before the DCOHR regarding such claim.  *See* D.C. Code § 2-1403.16(a).

previous employer. Therefore, Plaintiff should not be permitted to amend her Complaint to include these irrelevant and futile allegations that relate solely to Plaintiff's employment with Wackenhut.

WHEREFORE, for the reasons set forth above, Defendant respectfully requests that Plaintiff's Motion for Leave to File Amended Complaint be denied. A proposed order is submitted herewith as Exhibit 3.

Respectfully submitted this 23rd day of May, 2008.

MARTENSON, HASBROUCK & SIMON LLP

*/s/* Donna L. Keeton
Marty N. Martenson (Ga. Bar No. 471100)
Donna L. Keeton (Ga. Bar No. 006961)
3379 Peachtree Road, N.E., Suite 400
Atlanta, GA 30326
Telephone: (404) 909-8100
Facsimile: (404) 909-8120

-and-

James E. McCollum, Jr., Esq. (#398117)
Amit K. Sharma, Esq. (#503604)
McCollum & Associates, LLC
7309 Baltimore Avenue, Suite 117
P.O. Box 1717
College Park, MD 20741-1717
Telephone: (301) 864-6070
Facsimile: (301) 864-4351

Attorneys for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANGEL TABE, | ) | |
| | ) | |
| Plaintiff | ) | Case No.: 1:07-cv-02043 (RMU) |
| | ) | |
| v. | ) | |
| | ) | |
| ALLIED BARTON SECURITY SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing document entitled DEFENDANT'S RESPONSE TO

PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT has been filed with

the Court via the Court's Electronic Case Filing and Case Management System, which

automatically sent notification of such filing to Plaintiff's counsel of record:

Alan Banov, Esq.
Alan Banov & Associates
8401 Colesville Road, Suite 325
Silver Spring, MD 20910
abanov@banovlaw.com

This 23rd day of May, 2008.

/s/ Donna L. Keeton
Donna L. Keeton (Ga. Bar No. 006961)
Martenson, Hasbrouck & Simon LLP
3379 Peachtree Road, N.E., Suite 400
Atlanta, GA 30326
Telephone: (404) 909-8100
Facsimile: (404) 909-8120

# EXHIBIT 1

TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANGEL TABE,                                )
                                           )
        Plaintiff                          )    Case No.: 1:07-cv-02043 (RMU)
                                           )
        v.                                 )
                                           )
ALLIED BARTON SECURITY SERVICES,           )
                                           )
        Defendant.                         )
_____)

## DECLARATION OF DONNA L. KEETON

COMES NOW Donna L. Keeton and, pursuant to pursuant to 28 U.S.C. § 1746, makes the following declaration:

1.     My name is Donna L. Keeton.  I am over 18 years of age, suffer from no legal disabilities, and am competent to testify regarding the matters contained herein.  I offer this Declaration based upon my own personal knowledge and information.

2.     I am an Associate with the law firm of Martenson, Hasbrouck & Simon LLP, and was admitted to practice *pro hac vice* in the above-referenced matter on or about February 13, 2008.

3.     On or about February 21, 2008, I participated in a telephone conference with Plaintiff's counsel, Alan Banov, and his associate, Rachelle Ware, pursuant to the parties' obligation to confer regarding various matters under Federal Rule of Civil Procedure 26(f).  During that discussion, Mr. Banov and/or Ms. Ware informed me that Plaintiff intended to seek to amend her Complaint.

4.     At some point soon after that February 21, 2008 discussion, during the course of subsequent discussions with Ms. Ware regarding the parties' Joint Meet and

Confer Statement, Ms. Ware asked me whether Defendant would consent to a motion by Plaintiff to amend her Complaint. In response, I informed Ms. Ware that Defendant could not consent without knowing what amendments Plaintiff may seek, but, if Plaintiff would submit her proposed amended complaint to me for review, I would let her know whether or not Defendant would consent to Plaintiff's motion.

5.    On May 9, 2008, I returned to the office after being out of the office for several days and saw that I had an e-mail from Ms. Ware. According to the date and time indicated on my e-mail system, Ms. Ware's e-mail had been sent/received the day before, May 8, 2008, at approximately 6:00 p.m. Ms. Ware's e-mail contained an attachment, which Ms. Ware identified as Plaintiff's proposed amended complaint and asked that I review the draft and inform her "by noon tomorrow" whether Defendant would consent to Plaintiff's motion for leave. A true and correct copy of the May 8, 2008 e-mail I received from Ms. Ware is attached hereto as Exhibit A. A true and correct copy of the attachment to Ms. Ware's May 8, 2008 e-mail is attached hereto as Exhibit B.

6.    Upon seeing Ms. Ware's e-mail and realizing that I would not be able to meet her "noon" deadline, I sent Ms. Ware an e-mail informing her that I had just returned from several days out of the office and would, therefore, respond to her by 3:00 p.m. that day. A true and correct copy of my May 9, 2008 e-mail, which was sent at approximately 11:46 a.m., is attached hereto as Exhibit C.)

7.    At approximately 2:15 p.m. on May 9, 2008, I telephone Ms. Ware to discuss Plaintiff's proposed amended complaint, specifically Plaintiff's proposed claim for violation of the D.C. Wage Payment Law, D.C. Code § 3-1301 *et seq.* (*See* Exhibit C at ¶¶ 151-58.) During that discussion, I asked Ms. Ware what the statute of limitations

was for Plaintiff's proposed claim. Ms. Ware agreed to confirm the statute of limitations and called me back a few minutes later confirming that the statute of limitations was three (3) years, which is what my research had indicated. I, therefore, informed Ms. Ware that Plaintiff's proposed claim was time-barred since Plaintiff's employment with Defendant terminated in November 2004. Ms. Ware agreed that the claim was time-barred and stated that Plaintiff would delete the claim. She further agreed to send the revised version of the amended complaint to me for review.

8.      At approximately 3:00 p.m. on May 9, 2008, Ms. Ware sent me an e-mail in which she stated that she had "made some revisions to the amended complaint," and that she would send me the revised draft "shortly" after Mr. Banov reviewed it. A true and correct copy of Ms. Ware's May 9, 2008 e-mail is attached hereto as Exhibit D.

9.      As of 5:00 p.m., I still had not received the revised amended complaint from Ms. Ware, and had not received any further communications from Ms. Ware regarding the status of the revised amended complaint. Since it was after 5:00 p.m., and a Friday, I knew that it was highly unlikely I would be able to contact my client to discuss Plaintiff's revised amended complaint. I, therefore, sent Ms. Ware an e-mail at 5:18 p.m., informing Ms. Ware that, since it was after 5:00 p.m., I would be unable to confirm whether or not Defendant would consent to Plaintiff's amended complaint until the next week. A true and correct copy of that May 9, 2008 e-mail is attached hereto as Exhibit E.

10.     After I sent my e-mail to Ms. Ware at 5:18 p.m., I received no further contact from Plaintiff's counsel regarding Plaintiff's proposed amended complaint. Instead, I subsequently received a Notice of Electronic Filing from the Court, which indicated that Plaintiff had filed a Motion for Leave to File Amended Complaint at

approximately 7:00 p.m. that evening (May 9, 2008).    Upon reviewing Plaintiff's proposed amended complaint that was attached to her Motion, I realized that Plaintiff's amended complaint contained claims for gender discrimination/sexual harassment under Title VII and the D.C. Human Rights Act.    At no time prior to Plaintiff's filing of her Motion for Leave to File Amended Complaint did Plaintiff's counsel inform me that they were planning to add gender discrimination and/or sexual harassment claims in this action..

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of May, 2008.

Donna L. Keeton

## Donna L. Keeton

| | |
|---|---|
| **From:** | Rachelle Ware [rware@banovlaw.com] |
| **Sent:** | Thursday, May 08, 2008 6:09 PM |
| **To:** | Donna L. Keeton |
| **Cc:** | 'Alan Banov'; richangels@hotmail.com |
| **Subject:** | Draft of amended complaint |

Ms. Keeton:

Attached you will find a draft of our amended complaint, which is due tomorrow. Please review it and let us know by noon tomorrow whether you consent to our motion for leave to file the complaint.

Please note that we have added an additional count – violation of DC's Wage Payment Law. See D.C. Code Section 32-1301(a). We are willing to discuss settlement of this claim.

Best,
Rachelle Ware

Rachelle S. Ware, Esq.
Alan Banov and Associates
8401 Colesville Road, Suite 325
Silver Spring, MD 20910
Phone: 301-588-9699
Fax: 301-588-9698
rware@banovlaw.com
www.banovlaw.com

Disclaimer: The information contained in this e-mail may be attorney privileged and confidential information intended only for the use of the individual or entity designated above in the email address heading(s). If the reader of this message is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender. After having done so, please permanently delete this message from your computer and/or WAN information store. Thank you for you kind cooperation.

IRS Circular 230 Disclosure: IRS rules restrict written federal tax advice from lawyers under Circular 230, including in e-mails. The sender of this message does not practice in the area of federal or state tax law. Nothing in this message is intended to be used as tax advice. Nor may it be used to avoid any penalty under federal tax laws. This message was not intended to support the promotion or marketing of any transaction.

**EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGEL TABE<br>614 Ethan Allen Avenue<br>Takoma Park, MD 20912,<br><br>      Plaintiff,<br><br>      v.<br><br>ALLIEDBARTON SECURITY SERVICES, LLC,[1]<br>700 19th Street, N.W.<br>Washington, DC 20433,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.1:07-CV-02043 (RMV/AK)<br>)<br>)<br>)<br>)<br>)<br>)<br>) JURY TRIAL DEMANDED |

**AMENDED VERIFIED COMPLAINT**
(Disability and Discrimination and Failure to Pay Last Wages)

A. PRELIMINARY STATEMENT

1.      The Court has jurisdiction of this case under 28 U.S.C. §§1331, 1343; Title I of

the Americans With Disabilities Act of 1991 (ADA), 42 U.S.C. § 12117(a), *see also* Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f); and the District of Columbia

Wage Payment Law, D.C. Code § 32-1308(a).

2.      Venue properly lies within this District under Title VII, 42 U.S.C. § 2000e-5(f),

because Defendant AlliedBarton Security Services does business within the District of Columbia

and because plaintiff's claims arose within this judicial district.

B. THE PARTIES

3.      Plaintiff Angel Tabe is a resident of Takoma Park, Maryland, and a former

employee of AlliedBarton Security Services (hereinafter "defendant").

4.      AlliedBarton Security Services is a security officer services company which

assertedly employs over 50,000 employees across the United States, including the District of

---

[1]   The caption has been corrected to state defendant's correct name.

**EXHIBIT B**

Columbia.  At all times relevant to this action, defendant was an "employer" as defined by § 701(b) of Title VII, 42 U.S.C. § 2000e-(b)

## C. FACTS CENTRAL TO PLAINTIFF'S CLAIMS

5.    On or about February 6, 2000, plaintiff was involved in an automobile accident in Delaware and injured her head, shoulder, cervical spine, right knee, and back.

6.    As a result of the accident, plaintiff suffered a severe, on-going lumbar strain injury and a posterior lateral tear in her right knee.

7.    In 2000, plaintiff underwent surgery on her right knee and used crutches for several months; she underwent physical therapy for her injuries until approximately December 2000.

8.    The accident left plaintiff wearing two braces – one on her right knee and the other on her lower back.

9.    In September 2001, notwithstanding her injuries, Plaintiff Tabe was hired as a Security Officer by The Wackenhut Corporation, defendant's predecessor on the job, and assigned to work at the International Monetary Fund's headquarters, located at 700 19th Street, N.W., in Washington, D.C.

10.    While Wackenhut required her to wear a uniform, consisting of a coordinating shirt, pants and jacket, its uniform substantially concealed plaintiff's back brace, as the lower portion of the brace fit inside her pants and the jacket covered the upper part of the brace, which she wore over her uniform shirt.

11.    One of plaintiff's supervisors was Senior Captain Arthur Milling, a male.

12.    Capt. Milling administered and oversaw the project's security operations.

13.    During the duration of their employment at Wackenhut, and subsequent employment with defendant, Capt. Milling had supervisory authority over plaintiff.

14.     Starting in September 2001, and continuing throughout the duration of her employment with Wackenhut, and again in November 2004, during their subsequent employment with AlliedBarton, Capt. Milling repeatedly harassed plaintiff sexually, through November 5, 2004, when he, as an AlliedBarton supervisor, wrongfully terminated her.

15.     Plaintiff repeatedly rejected his inappropriate advances.

16.     Upon information and belief, requests for transfer and similar accommodations were subject to Capt. Milling's approval.

17.     During the course of their employment with Wackenhut and subsequent employment with defendant, Capt. Milling repeatedly blocked her requests for accommodation for her disability through November 5, 2004, when he—now an AlliedBarton major— wrongfully terminated her.

18.     When Ms. Tabe reported for her first day of work at Wackenhut, another employee escorted her to Capt. Milling.

19.     Capt. Milling informed her that he, rather than Patrick Nebo, the project manager, assigned duties, scheduled work hours, and decided who would work there.  Capt. Milling then assigned Ms. Tabe to the night shift.

20.     Capt. Milling later showed plaintiff a cabinet in the Security Operations Center ("SOC"), where she safely could store personal items while on duty, and told her that she could store her uniform shirt and jacket in his office.

21.     Over the next few months, plaintiff realized that Capt. Milling's instructions for storing her personal items were unusual, against policy, and that he did not give other, similarly situated employees such benefits.

22.     Between September and December 2001, Capt. Milling committed his first overt incidents of sexual harassment.

4

23.    Several times when he encountered plaintiff, he would say, "One of these days I'm gonna take you home with me," "I want you to come home with me," and similar comments. In response, plaintiff would tell him, "No."

24.    Ms. Tabe felt uncomfortable with his advances and, in an effort to discourage such advances, tried to ignore and downplay them.  She also tried to avoid him.  For example, if she was headed in a particular direction, and saw him headed towards her, or in her path, she would try to walk a different way to prevent their paths from crossing.  However, this was not always possible and when she encountered Capt. Milling, he continued to make similar comments to her.

25.    Despite wearing braces on her back and knee, Ms. Tabe capably and successfully performed her duties as a security officer.

26.    In early- to mid-2002, as a recommendation from the Takoma Park Area office, she successfully trained as a Property Resource Officer ("PRO"), which earned her a permanent status at the IMF site.

27.    Capt. Milling assigned her to the evening shift.  Plaintiff was assigned to the turnstile at the lobby entrance, which required her to stand, as well as escort people throughout her 8-hour shift.  Wackenhut permitted her to take a 15-minute break every 30, 45, 60, or sometimes 90 minutes.

28.    At all relevant times plaintiff has suffered from a chronic, disabling back and leg condition, which have caused substantial adverse impact on her major life activities, such as walking, sitting, sleeping, and standing.

29.    By mid-to-late 2002 plaintiff's condition had become a disability.

30.    Her disability has required plaintiff to wear braces on her back and knee.

5

31.     Beginning in mid-2002, as she worked the evening shift, plaintiff began to experience increasing pain in her legs and back, particularly when walking on steps or up a slope.

32.     She explained her medical conditions to her supervisor, Captain Edgar Angulo, and requested a transfer as an accommodation.

33.     Capt. Angulo asked for medical reports supporting her request, adding that a favorable decision would be automatic with medical documentation.

34.     Within several days, plaintiff submitted appropriate medical documentation, but Capt. Angulo did not transfer her immediately, because such transfer requests had to be submitted to Capt. Milling for his approval.

35.     Plaintiff discussed her medical concerns and transfer request with two project managers, each of whom informed her she would be transferred to the I-Square, another project building.  At I-Square, she would be able to perform most of her duties while seated.

36.     At the I-Square building, a significant number of the duty stations involved seated positions for security officers.

37.     However, in around mid-2002 Capt. Milling blocked her transfer.

38.     Captain Sallie Douglas, the evening shift supervisor, informed her that her transfer had been denied and that "the bottom line is that Capt. Milling thinks you should look for another job."

39.     Plaintiff complained to Capt. Douglas of sexual harassment by Capt. Milling, telling her about his ongoing sexual advances and frequent comments that he was going to take her home with him.

40.    Capt. Douglas recalled overhearing Capt. Milling state that he wanted plaintiff to marry him and make him happy.  Capt. Douglas also warned plaintiff, "Be careful because, if anything, you would be the one to leave," since he was the boss.

41.    Also in mid-to-late 2002, Ms. Tabe often visited Dr. Christopher Magee, an orthopedic surgeon, and he issued her three disability certificates containing work restrictions. He also prescribed stronger pain medication for her.

42.    On or about July 31, 2002, Dr. Magee issued a disability certificate for plaintiff with the following restriction:  "Permanent light duty w[ith] no standing over 30 mins."

43.    Plaintiff presented this certificate to her supervisor, Capt. Angulo, but the employer did not accommodate her disability with light duty.

44.    In about October 2002, he examined her legs and determined that her left knee – the "good" one—was also deteriorating.  He explained that, since she tried to avoid placing much weight on her injured right knee, she was putting too much pressure on the left, and he prescribed a brace for her left knee.

45.    Ms. Tabe was now wearing braces on both knees, as well as on her back.

46.    However, none of the braces was visible at her turnstile post because they were covered by the Wackenhut company uniform.  Wackenhut's officers wore jackets over uniformed shirts, which were tucked in, and pants.  The Wackenhut jacket concealed her back brace, revealing it only when she removed her jacket, such as during her lunch break.

47.    On or about October 7, 2002, Dr. Magee issued another disability certificate to her.  It contained the following work restriction:  "Recommend sitting position, standing highly discouraged."

48.    Plaintiff again presented this certificate to Capt. Angulo, but the employer did not make an accommodation for her.

49.    On or about October 21, 2002, Dr. Magee examined her again.  He found a decreased range of motion in her knees and noted that the pain "has interfered with her ability to stand and walk at work."  He recommended that she "work at a sedentary status with occasional standing for no longer than one hour during an eight-hour shift."

50.    Also on October 21, Dr. Magee issued her a new disability certificate with heightened work restrictions.  It prescribed: "Light duty = sedentary work w/occasional standing less than 1 hr per 8 hr shift @ intervals of 10-15 min max."

51.    Plaintiff presented this certificate to Capt. Angulo, but again the employer did not grant her an accommodation.

52.    Meanwhile, Maj. Milling continued to make inappropriate and unwelcome sexual advances toward plaintiff, and she consistently rejected them.  For example, he told Ms. Tabe that he had divorced his wife and was now "single and available" for her.  He also gave her a telephone number (beginning with a 703 area code), to call him.

53.    Effective on July 1, 2004, Defendant AlliedBarton assumed the contract with IMF.

54.    The month of June 2004 was a transition period from Wackenhut to AlliedBarton. Defendant conducted its own employee screening.  Plaintiff successfully undertook the screening process, and defendant became her employer as of July 1, 2004.

55.    Also in June 2004, defendant reviewed the security officers' uniforms to ensure they met its appearance standards.  During this process, employees were asked to try on and show their uniforms to the issuing officer for his approval.

56.    The issuing officer gave plaintiff a uniform to try on for him, and she did so, and he approved her uniform.

57.     Since Ms. Tabe was an excellent employee, with significant experience, defendant asked her to help train new staff over the weekends.

58.     On or about June 24, 2004, IMF held a picnic in Maryland.  At the picnic, Maj. Milling asked her when she was "going to be serious" about him.  In response, plaintiff told him, firmly, never to raise such an issue with her again.

59.     Thereafter, Maj. Milling began to treat her coldly and ceased to speak to her unless she initiated conversation, which was always work-related.

60.     Maj. Milling learned that she had applied directly to IMF for a security position that was open to the public and threatened to fire her if she ever did that again.

61.     Throughout her employment with defendant, plaintiff continued to suffer from a disabling back and leg condition.  Her injuries significantly restricted or prevented her from engaging in major life activities, including walking, showering, cooking, sleeping, shopping for groceries, and standing.  Such activities were extremely painful for her and she could fall very easily.  In order to cope with the pain, she constantly wore her back brace, including while she slept and removing it only to shower.

62.     In early July 2004, on the recommendation of IMF Security Division director, Mr. Norman Schroeder, and IMF Security Services Manager Jeremy Stone, project manager Leon Beresford and discussed with plaintiff, who has studied and worked as a journalist, the commencement of a project newsletter, which she would edit.

63.     Mr. Beresford and plaintiff concluded that she would have a desk and computer at her disposal to produce a "dummy" (sample) of the newsletter.

64.     However, from then until early November 2004 defendant made no mention of the desk, computer, dummy, or newsletter.

65.    Capt. Karen Yates, plaintiff's supervisor, and a former Wackenhut employee, was well aware of plaintiff's disabling condition and had previously seen her back brace.

66.    Under Wackenhut, Capt. Yates had asked plaintiff to work overtime in positions that required standing.  Plaintiff told Capt. Yates about her medical condition and explained that it was very painful to stand for her regular duties.  Plaintiff told her she could not bear overtime work that entailed further standing.  Thereafter, when Capt. Yates asked plaintiff to work overtime, she would give her posts that involved mostly sedentary tasks.  When Capt. Yates asked her to work overtime, she would tell plaintiff that it was not a standing assignment.

67.    Under AlliedBarton, Capt. Yates told plaintiff that she had had assigned me to a reception position permanently, but plaintiff was later reassigned to the Child Care Center.  Still Capt. Yates would schedule plaintiff for overtime work only if it involved mostly sedentary tasks.

68.    Around July or August 2004, defendant's new supervisor at I-Square (name unknown) made an open appeal to experienced staff to transfer to his site.

69.    Transfers between defendant's sites and shifts were normal and common amongst defendant's employees.

70.    After Capt. Yates initially encouraged her to transfer, Ms. Tabe formally applied for a transfer by submitting her transfer application to Capt. Yates.

71.    Plaintiff's transfer request was subject to Maj. Milling's approval.

72.    Plaintiff discussed the pending transfer with the I-Square supervisor, who told her that he really needed experienced workers and was excited that she was seeking to join him.

73.    Approximately two months later, however, Capt. Yates told plaintiff that she would not be transferred.  She gave no explanation for the denial.  When plaintiff inquired about

10

the reason why she would not be transferred, Capt. Yates told her, "Tabe, forget about it; it's not gonna happen."

74.    Thereafter, neither Capt. Yates nor the I-Square supervisor again discussed the possibility of such a transfer with Ms. Tabe.

75.    On or about Thursday, November 4, 2004, Ms. Tabe notified defendant of her disability and formally requested a reasonable accommodation.

76.    On or about that day Ms. Vasquez (first name unknown), one of defendant's employees, coordinated the recall of spring jackets and the distribution of autumn sweaters.

77.    When plaintiff went to turn in her jacket, Ms. Vasquez told her, "You look sloppy." Ms. Vasquez insisted that plaintiff return her uniforms (pants and shirt) and sign out new sets that were one size smaller, even though in June the issuing officer had approved plaintiff's uniforms.

78.    Ms. Tabe tried to explain that the pants on a smaller uniform would be too tight to accommodate the lower portion of her back brace and why the brace was medically necessary. However, Ms. Vasquez refused to listen to her explanation.

79.    Ms. Vasquez instructed Ms. Tabe not to wear the sweater until the following Monday, November 8, 2004.

80.    Ms. Tabe asked to retain her spring jacket until November 8 (the following Monday) to conceal her back brace. However, Ms. Vasquez refused to allow her to keep the jacket or wear the sweater, which meant that the upper portion of her brace would be plainly visible for the remainder of the day, as well as on Friday, November 5.

81.    Later on November 4, plaintiff described the encounter with Ms. Vasquez to Mr. Beresford, the Project Manager, and asked him for a reasonable accommodation for her disability

82.    Plaintiff described her automobile accident, her subsequent pain and disability, and her doctors' orders.  Plaintiff also removed her outer jacket to show him that the upper portion of her back brace was plainly visible without a jacket.

83.    Plaintiff asked for reasonable accommodations, and even suggested ways of accommodating her brace, such as permitting her to wear the spring jacket until Monday (only one more day) or allowing her to wear the sweater before then.

84.    However, Mr. Beresford refused to make any exceptions for her.

85.    Plaintiff also explained that defendant could accommodate her disability by transferring her to one of the seated positions at I-Square, and inquired about the transfer to I-Square for which she had applied.

86.    Mr. Beresford told her that he recalled seeing her transfer papers, but did not know the status of her application.

87.    Plaintiff asked him if he could help her accelerate the process.  In response, Mr. Beresford stated that he would see what he could do.

88.    On the next day, Friday, November 5, plaintiff reported for duty and was assigned to a new post – the turnstile in the front lobby, instead of the Child Care Center, her regular post.

89.    Since her jacket and hat were not allowed inside the building, plaintiff left them at the reception desk.  She rushed to relieve her colleagues on the day shift.

90.    A few minutes later, Capt. Yates removed plaintiff from the post.  As plaintiff stood on post, Capt. Yates looked at Ms. Tabe and, referring to the plainly visible back brace, removed her from the post, stating, "Oh, no, Tabe, I cannot let you stand on post like that!"

91.     Capt. Yates escorted plaintiff to the office of Mark Odom, defendant's quality assurance manager. Maj. Milling[2] was in Mr. Odom's office, and plaintiff's personnel file was on the desk. Mr. Odom told her to "wait outside," and the door shut behind her.

92.     Shortly thereafter, Capt. Yates summoned her back into the office.

93.     During this meeting, defendant constructively discharged plaintiff, by refusing to accommodate her brace and insisting that she disregard her doctor's orders to wear the brace, since she could not work without the brace.

94.     Mr. Odom presented Ms. Tabe with a typewritten form to sign. The form stated (falsely) that plaintiff was capable of working without the brace.

95.     Plaintiff explained to them that her doctor had told her she <u>must</u> wear the brace at all times during her waking hours and, therefore, she could not sign the form.

96.     Mr. Odom then told Ms. Tabe that she would be required to go home and could not return to work until she produced a doctor's note stating that she could work <u>without</u> the brace.

97.     Thus, Mr. Odom insisted that Ms. Tabe reject her doctor's medical recommendations for coping with her disability, just to satisfy some image that AlliedBarton felt it needed to portray to the public.

98.     Ms. Tabe expressed her fear that her physician (Dr. Rosita Dee) would refuse to issue such a note. She requested a statement from Mr. Odom indicating AlliedBarton would not accommodate her brace.

99.     He told her such a letter could be initiated through Human Resources, but, "in the meantime, you go home until you can produce a doctor's note saying you can work without the

_____

[2]   By this time, Capt. Arthur Milling had been promoted to Major.

13

brace." At this point, because defendant was effectively insisting that plaintiff satisfy a requirement that was unhealthy for her, it was constructively discharging her.

100.    Ms. Tabe then turned to Maj. Milling, believing he would recall her medical condition when they worked at Wackenhut, and reminded him that there were medical papers in her file to support her disability.  However, Maj. Milling asked, "Which file?  Wackenhut left and took with them the files of their employees."

101.    Ms. Tabe continued to press them for written confirmation that AlliedBarton could not accommodate her with the brace.  In response, Mr. Odom told her to go to her doctor and not to return to work unless and until she could produce medical documentation stating that she could work without the brace.

102.    At the conclusion of this meeting, defendant restrained plaintiff and did not permit her to move freely in the building.

103.    As she walked out of the office, Ms. Tabe encountered Mr. Beresford, with whom she had met the previous evening concerning the uniform.  She asked him if they could talk, explaining the urgency.  He refused.

104.    Capt. Yates then interjected and rudely declared, "Tabe, I have been instructed to escort you out, and you are not allowed to speak with anyone."

105.    Capt. Yates proceeded forcibly to escort plaintiff to the women's locker room. Capt. Yates told plaintiff to collect her personal belongings and watched her do so.

106.    Capt. Yates then escorted plaintiff out of the building as other IMF staff, visitors and her colleagues watched.

107.    In the past, only individuals who had been fired for unprofessional conduct were restrained and treated in such a manner.

108.    At the lobby, plaintiff realized that her jacket, hat, and other items were still at the reception desk.  Capt. Yates bluntly told her that she did not feel like going back; nor was she letting plaintiff go unescorted.

109.    To date defendant has never returned these items to her.

110.    On November 10, 2004, after taking the first available appointment with her Dr. Dee, plaintiff returned to the IMF building with a doctor's note which clearly stated that she needed to continue wearing the brace and explained why.

111.    Dr. Dee's note, also dated November 10, stated: "Patient is medically advised to use back brace on a continuous basis for her well-being + safety.  If there are any questions or concerns, please feel free to call."

112.    Plaintiff also brought copies of three older medical notes explaining her medical condition which she had previously submitted to Wackenhut.

113.    On her arrival at the lobby front desk, plaintiff again was restrained and not permitted to proceed on her own downstairs to management.

114.    Sgt. Angela Dodd escorted her to Mr. Odom's office. Plaintiff was asked to wait outside his office.  At this point, Sgt. Dodd did not leave her alone, but waited there with her the entire time.

115.    Approximately thirty minutes later, Mr. Odom told her that Maj. Milling, not he, would see her.  Maj. Milling then met with plaintiff.

116.    Maj. Milling read Dr. Dee's statement that it was medically necessary for her to continue wearing the back brace.  He also read the certificates of disability which Dr. Magee had completed and which she previously had submitted to Wackenhut.

117.    Maj. Milling handed the papers back to her and bluntly told plaintiff: "You can no longer work here."

118.    Ms. Tabe asked him whether she should go to the area office. He replied, sarcastically, "Hmmm, which area office? This is not Wackenhut."

119.    Plaintiff specifically asked Maj. Milling to put his decision in writing, but he refused, stating, "I do not want to be the one to commit myself."

120.    Plaintiff handed the medical papers back to him, informing him that they were for the company. She asked him to keep the originals and give her copies for her records, and he did so.

121.    Strangely, on one of the copies, Maj. Milling placed a telephone number and asked plaintiff to call the number. Plaintiff noted that the telephone number began with a 703 area code and suspected it might be the number that he had given her before when he was sexually harassing her.

122.    On or about November 23, 2004, plaintiff received a telephone call from Erin Headen, defendant's administrative assistant. Ms. Headen first claimed that she had left messages for Ms. Tabe, then blurted (falsely), "Nobody fired you. Maj. Milling only asked you to go bring your medical papers."

123.    Ms. Headen's statements were plainly false since plaintiff had brought in a doctor's note and all relevant medical documentation on November 10. Nor had plaintiff received any prior messages from Ms. Headen or anyone else at AlliedBarton. Ms. Headen later admitted that she had been calling the wrong number.

124.    Plaintiff immediately recalled that Maj. Milling refused her request to put his decision in writing and wondered if Maj. Milling had lied about his November 10 meeting with her.

125.    Mr. Beresford then got on the phone and he suggested that they should meet. Although she was very concerned that the meeting would afford defendant another opportunity

to harass her and intimidate her into giving up her brace, Ms. Tabe told him that she was more than willing to meet with him just to hear what he had to say, to see if perhaps he would be cooperative this time, and agreed to meet with him on November 29, 2004.

126.    However, after talking with Mr. Beresford, she realized that he merely was making same assurances as Mr. Odom had on November 5, and given the circumstances of her prior meeting with Maj. Milling on November 10, she felt the need to document the events which had transpired and her communications with defendant.

127.    Plaintiff then wrote a letter to Mr. Beresford, emphasizing that Maj. Milling had in fact fired her and recounting the callous and humiliating circumstances of her firing.  She also pointed out that Capt. Milling refused to document his decision and expressed her loss of trust in its management.

128.    She wrote:  "After what [I] suffered these past weeks by way of intimidation, harassment, and finally termination, from Barton's managers, as well as their close collaborators, it is difficult for me to expect any further serious and meaningful verbal discussions with Barton's representatives, through whom the company has lost my trust."

129.    Ms. Tabe hoped that her letter would appeal to the better instincts and good faith of AlliedBarton's managers and convince them to accommodate her disability, and expected a reply prior to the scheduled meeting.

130.    However, she never received a response from defendant.

131.    Defendant thus did not refute plaintiff's essential claims of discrimination or termination.

132.    Plaintiff's last rate of pay was $16.07/hour.  At the time of her discharge, her pay for a 40-hour workweek was $642.80 per week.

133.    A few weeks after Ms. Tabe e-mailed Mr. Beresford, requesting her accrued 2004 vacation pay, but he did not respond to her request.

134.    Plaintiff later e-mailed Ms. Headen regarding her vacation pay, but she never responded.

135.    Defendant still owes her two weeks of salary (approximately $1,285.60) for the unpaid vacation pay.

### D.    STATEMENT OF CLAIMS

#### Count I:  Disability Discrimination  (ADA)

136.    Plaintiff adopts and incorporates by reference paragraphs 1-135 above.

137.    At all times during her employment with defendant, Plaintiff Angel Tabe was a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 121118(8).

138.    As explained above, beginning in mid-2002, and continuing throughout the duration of her employment with defendant plaintiff experienced increased pain in her legs and back, particularly when walking on steps or up a slope.

139.    Her doctor prescribed stronger pain medication for her, instructed her to wear a third brace on her left knee—the good one, which was also deteriorating, and issued her three disability certificates containing restrictions on standing and walking.

140.    Plaintiff's back and leg injuries significantly restricted or prevented her from engaging in major life activities, including walking, sleeping, showering, cooking, shopping for groceries, socializing and standing; all of these activities were painful for her.

141.    In order to cope with the pain, she constantly wore her back brace, removing it only to shower, and even sat to do so.  She even she slept with her metal back brace, which supported her back and reduced the pain.

142.    As described above, plaintiff repeatedly asked defendant to make reasonable accommodations for her disability, including allowing her to wear a different uniform and transferring her to a more sedentary assignment.

143.    The accommodations she requested were indeed reasonable, since transfers between defendant's sites were normal and routine, openings existed, and defendant easily could have permitted her to wear a uniformed spring jacket or sweater for an additional day.

144.    However, defendant failed or refused to accommodate her disabilities.

145.    Defendant discriminated against plaintiff, in violation of the ADA, when it failed to make reasonable accommodations for her known disability.

146.    On or about November 5, 2005, defendant constructively terminated plaintiff.

147.    On or about November 10, 2005, defendant maliciously terminated plaintiff.

148.    By discharging plaintiff, defendant discriminated against plaintiff on the basis of her disabilities, her record of such, or regarded her as being more disabled than she actually was.

149.    By so discriminating against plaintiff on the basis of her disabilities, defendant violated the ADA, 42 U.S.C. § 12203.

150.    As a result of defendant's malicious violations of the ADA, plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

<u>Count II</u>:  <u>Violation of D.C. Wage Payment Law</u>

151.    Plaintiff adopts and incorporates by reference paragraphs 1-150 above.

152.    Under the D.C. Wage Payment Law, D.C. Code § 32-1301 *et seq.* (2001), defendant had "four days" after it fired her to pay her all of her accrued vacation pay, along with other unpaid wages.  *See* D.C. Code § 32-1303(1).

153.     As explained above, on her discharge defendant did not pay plaintiff for two weeks of accrued vacation pay.

154.     Despite her requests (and her counsel's request), defendant has not paid plaintiff any of her accrued vacation pay.

155.     The value of the unpaid vacation pay is approximately $1,285.60.

156.     By failing to pay plaintiff accrued vacation pay within the statutory deadline, AlliedBarton violated the D.C. Wage Payment Law, D.C. Code § 32-1301 *et seq*.

157.     In addition, liquidated damages have been accruing on the unpaid vacation pay, at the rate of 10 percent interest each day up to 100%, *see* D.C. Code § 32-1303(4).

158.     For the foregoing reasons, irrespective of the legality of her discharge, defendant owes plaintiff approximately $2571.20 in unpaid wages.

## E.  REMEDIES SOUGHT

159.     WHEREFORE, plaintiff respectfully requests that the Court issue a judgment granting her the following relief from defendant:

a.     A declaratory judgment that defendant discriminated against plaintiff, as alleged herein;

b.     Reinstatement;

c.     Back pay, including without limitation other lost benefits due to defendant's discrimination against plaintiff;

d.     Plaintiff's unpaid vacation pay, plus liquidated damages;

e.     Compensatory and punitive damages in the amount of $300,000, pursuant to the ADA and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a(a)(2), 1981a(b)(3)(A), for taking these actions with malice and bad faith;

f.      Prejudgment and postjudgment interest thereon, on the lost compensation and compensatory damages, effective November 5, 2005;

g.      Reasonable attorneys' fees and costs under 42 U.S.C. § 12117, 42 U.S.C. § 2000e-5(k), and D.C. Wage Payment Law, D.C. Code § 32-1308(b); and

h.      Such other and further relief as to the Court seems just and warranted.

### F.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

160.    On or about April 13, 2005, and before filing this case, plaintiff filed a timely complaint of discrimination against the defendant with the Equal Employment Opportunity Commission (hereafter "EEOC"), Charge Number 100-205-00835, alleging disability and gender discrimination.

161.    After the passage of more than 180 days, on or about September 28, 2007, the EEOC issued plaintiff a right-to-sue notice.

162.    Plaintiff received the letter approximately seven days later.

163.    Plaintiff filed her original complaint *pro se* on November 13, 2007, within 90 days of receiving the right-to sue letter from the EEOC.

164.    Accordingly, plaintiff has complied with all administrative prerequisites before filing her discrimination suit.

### G.  JURY DEMAND

165.    Plaintiff requests a jury trial on all issues of fact and damages arising herein.

<u>VERIFICATION</u>

I hereby certify under penalty of perjury that I am the plaintiff in the above-captioned

case; that I have read the foregoing Verified Amended Complaint; and that the facts related

herein are true and correct to the best of my knowledge, information, and belief.

Executed at Silver Spring, Maryland, this ___ day of May, 2008.


_____

ANGEL TABE


Respectfully submitted,


_____   /s/ Alan Banov   _____
ALAN BANOV #95059
Alan Banov & Associates
8401 Colesville Road, Suite 325
Silver Spring, MD 20910
301-588-9699; fax:  301-588-9698
abanov@banovlaw.com
Attorney for Plaintiff

## Donna L. Keeton

| | |
|---|---|
| **From:** | Donna L. Keeton |
| **Sent:** | Friday, May 09, 2008 11:46 AM |
| **To:** | 'Rachelle Ware' |
| **Cc:** | 'Alan Banov'; richangels@hotmail.com |
| **Subject:** | RE: Draft of amended complaint |

I just returned to the office after being out for several days. I will review Plaintiff's draft and let you know by 3:00 p.m. today whether Defendant will consent to the motion to amend.

Donna L. Keeton
Martenson, Hasbrouck & Simon LLP
3379 Peachtree Road, N.E.
Suite 400
Atlanta, Georgia 30326
Direct: (404) 909-8121
Facsimile: (404) 909-8120
Main: (404) 909-8100

This e-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received this message in error, and then delete it. Thank you.

> **From:** Rachelle Ware [mailto:rware@banovlaw.com]
> **Sent:** Thursday, May 08, 2008 6:09 PM
> **To:** Donna L. Keeton
> **Cc:** 'Alan Banov'; richangels@hotmail.com
> **Subject:** Draft of amended complaint
>
> Ms. Keeton:
>
> Attached you will find a draft of our amended complaint, which is due tomorrow. Please review it and let us know by noon tomorrow whether you consent to our motion for leave to file the complaint.
>
> Please note that we have added an additional count – violation of DC's Wage Payment Law. See D.C. Code Section 32-1301(a). We are willing to discuss settlement of this claim.
>
> Best,
> Rachelle Ware
>
> Rachelle S. Ware, Esq.
> Alan Banov and Associates
> 8401 Colesville Road, Suite 325
> Silver Spring, MD 20910
> Phone: 301-588-9699
> Fax: 301-588-9698
> rware@banovlaw.com
> www.banovlaw.com
>
> Disclaimer: The information contained in this e-mail may be attorney privileged and confidential information intended only for the use of the individual or entity designated above in the email address heading(s). If the reader of this message is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender. After

**EXHIBIT C**

having done so, please permanently delete this message from your computer and/or WAN information store. Thank you for you kind cooperation.

IRS Circular 230 Disclosure:  IRS rules restrict written federal tax advice from lawyers under Circular 230, including in e-mails. The sender of this message does not practice in the area of federal or state tax law. Nothing in this message is intended to be used as tax advice. Nor may it be used to avoid any penalty under federal tax laws. This message was not intended to support the promotion or marketing of any transaction.

## Donna L. Keeton

| | |
|---|---|
| **From:** | Rachelle Ware [rware@banovlaw.com] |
| **Sent:** | Friday, May 09, 2008 3:07 PM |
| **To:** | Donna L. Keeton |
| **Cc:** | 'Alan Banov'; richangels@hotmail.com |
| **Subject:** | Amended Complaint |

Donna:

I made some revisions to the amended complaint.  Alan needs to review them before we send a new draft to you.  He just finished meeting with a client and went for lunch.  We will send it to you shortly.

Thanks for you patience.

Rachelle S. Ware, Esq.
Alan Banov and Associates
8401 Colesville Road, Suite 325
Silver Spring, MD 20910
Phone: 301-588-9699
Fax: 301-588-9698
rware@banovlaw.com
www.banovlaw.com

Disclaimer:  The information contained in this e-mail may be attorney privileged and confidential information intended only for the use of the individual or entity designated above in the email address heading(s).  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify the sender.  After having done so, please permanently delete this message from your computer and/or WAN information store.  Thank you for you kind cooperation.

IRS Circular 230 Disclosure:  IRS rules restrict written federal tax advice from lawyers under Circular 230, including in e-mails. The sender of this message does not practice in the area of federal or state tax law. Nothing in this message is intended to be used as tax advice. Nor may it be used to avoid any penalty under federal tax laws. This message was not intended to support the promotion or marketing of any transaction.

**EXHIBIT D**

## Donna L. Keeton

| | |
|---|---|
| **From:** | Donna L. Keeton |
| **Sent:** | Friday, May 09, 2008 5:18 PM |
| **To:** | 'Rachelle Ware' |
| **Cc:** | 'Alan Banov; richangels@hotmail.com; Marty N. Martenson; 'James E. McCollum Jr.'; 'Amit Sharma' |
| **Subject:** | RE: Amended Complaint -- Tabe v. AlliedBarton |

Rachelle:

As I informed you when you first mentioned a possible amended complaint approximately two (2) months ago, Defendant could not consent to Plaintiff amending the Complaint without first seeing Plaintiff's proposed amendments. However, it was not until approximately 6:00 p.m. yesterday that you first sent Plaintiff's proposed amended complaint to me, and, as we discussed earlier today, some of Plaintiff's proposed amendments were futile due to the applicable statute of limitations.

Since it is now after 5:00 p.m., and I still have not seen Plaintiff's revised amended complaint, I will be unable to confirm whether or not Defendant will consent to any such amended complaint until next week. In connection therewith, Defendant expressly reserves the right to object to any motion to amend the complaint Plaintiff may file without Defendant's consent and reserves any and all defenses that may be applicable to any proposed amended complaint Plaintiff may submit.

Should you have any questions regarding this matter, I will be in the office next week.

Donna L. Keeton
Martenson, Hasbrouck & Simon LLP
3379 Peachtree Road, N.E.
Suite 400
Atlanta, Georgia 30326
Direct: (404) 909-8121
Facsimile: (404) 909-8120
Main: (404) 909-8100

This e-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received this message in error, and then delete it. Thank you.

**From:** Rachelle Ware [mailto:rware@banovlaw.com]
**Sent:** Friday, May 09, 2008 3:07 PM
**To:** Donna L. Keeton
**Cc:** 'Alan Banov'; richangels@hotmail.com
**Subject:** Amended Complaint

Donna:

I made some revisions to the amended complaint. Alan needs to review them before we send a new draft to you. He just finished meeting with a client and went for lunch. We will send it to you shortly.

Thanks for you patience.

Rachelle S. Ware, Esq.
Alan Banov and Associates
8401 Colesville Road, Suite 325
Silver Spring, MD 20910
Phone: 301-588-9699

5/22/2008                                **EXHIBIT E**

Fax: 301-588-9698
rware@banovlaw.com
www.banovlaw.com

Disclaimer: The information contained in this e-mail may be attorney privileged and confidential information intended only for the use of the individual or entity designated above in the email address heading(s). If the reader of this message is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender. After having done so, please permanently delete this message from your computer and/or WAN information store. Thank you for you kind cooperation.

IRS Circular 230 Disclosure: IRS rules restrict written federal tax advice from lawyers under Circular 230, including in e-mails. The sender of this message does not practice in the area of federal or state tax law. Nothing in this message is intended to be used as tax advice. Nor may it be used to avoid any penalty under federal tax laws. This message was not intended to support the promotion or marketing of any transaction.

# EXHIBIT 2

TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT

EEOC FORM 131 (5/01)

# U. S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Sabrina Speight<br>Human Resources Assistant<br>ALLIED-BARTON SEC. SERVS.<br>2800 Shirlington Rd.<br>Suite 510<br>Arlington, VA 22206 | **Angel Tabe** |
| | THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**100-2005-00835** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[ ] Title VII of the Civil Rights Act          [X] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act          [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **23-MAY-05**    a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by                                   to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by
   to
   If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

**Stanika K. Smith,**
**Investigator Support Asst**
_____
*EEOC Representative*

*Telephone:*  **(202) 419-0743**

Enclosure(s): [X] Copy of Charge

**Washington Field Office**
**1801 L Street, N.W.**
**Suite 100**
**Washington, DC 20507**

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN   [ ] AGE   [X] DISABILITY   [ ] RETALIATION   [ ] OTHER

## See enclosed copy of charge of discrimination.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| Apr 22, 2005 | **Dana Hutter,**<br>**Acting Director** | *Dana R Hutter* |

# EXHIBIT 3

TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGEL TABE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-02043 (RMU) |
| | ) |
| ALLIED BARTON SECURITY SERVICES, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Having fully considered Plaintiff's Motion for Leave to File Amended Complaint

and the parties' submissions related thereto:

IT IS HEREBY ORDERED THAT Plaintiff's Motion for Leave to File Amended

Complaint is DENIED on the grounds that Plaintiff's proposed amendments are futile.

SO ORDERED this _____ day of _____, 2008.


_____
Ricardo M. Urbina
United States District Judge


Copies to:

Alan Banov, Esq.
Alan Banov & Associates
8401 Colesville Road, Suite 325
Silver Spring, MD 20910
abanov@banovlaw.com

James E. McCollum Jr., Esq.
Amit K. Sharma, Esq.
7309 Baltimore Avenue, Suite 117
P.O. Box 1717
College Park, MD 20741-1717
jmccollum@jmlaw.net

Marty N. Martenson, Esq.
Donna L. Keeton, Esq.
Martenson, Hasbrouck & Simon LLP
3379 Peachtree Road, N.E., Suite 400
Atlanta, GA 30326
mnmartenson@martensonlaw.com
dkeeton@martensonlaw.com